13351

WHITMIRE v. PUBLIX THEATRE CORPORATION

(162 S. E., 753)

*Messrs. Blythe & Bonham,* for appellant,

*Mr. J. R. Martin,* for respondent,

February 23, 1932.

The opinion of the Court was delivered by CIRCUIT JUDGE E. C. DENNIS, ACTING ASSOCIATE JUSTICE.

In this action, plaintiff sought to recover the sum of $3,-000.00 damages, actual and punitive, alleged to have been sustained by her by reason of her unlawful arrest. The case was tried before Judge John S. Wilson and a jury on February 9, 1931. The defendant moved for a nonsuit on the ground that there was no evidence tending to show any malicious, wanton, or high-handed conduct on the part of the defendant, or of any of its authorized agents. On a further ground that there was no evidence tending to show that the plaintiff was illegally arrested by any officer or agent of the defendant, or that any officer or agent of the defendant caused an arrest to be made. On the further ground that even if plaintiff was arrested, there was no evidence tending to show that said arrest was caused by the defendant or any authorized agent of the defendant, nor that any arrest was ever authorized or ratified by the defendant.

The nonsuit was refused, and after all of the evidence was in, the defendant moved for a directed verdict on the same grounds, which was also refused. The jury found for plaintiff $750.00 actual and $250.00 punitive damages.

This appeal, as shown by the original case for appeal, is from the refusal of the Court to grant the motions for nonsuit and for a directed verdict, and these exceptions will be disposed of first.

The evidence shows that plaintiff entered the theater of defendant and went into the rest room for ladies. She was seen to enter the rest room by Miss Trussel, cashier, and by Trammel, the ticket taker, but no objection was made. In a few minutes complaint was made to the cashier that a man dressed as a woman was in the rest room for ladies. Campbell, a prominent figure in this case, then inquired what the trouble was. Campbell seemed from his subsequent conduct to understand the complaint, and this case depends largely upon whether or not Campbell was an agent or representative of the defendant and whether or not his conduct was approved.

Miss Trussel then told Trammel about the complaint, and he agreed that she should go into the rest room and investigate, which she did. She saw plaintiff standing before a mirror arranging her hat, but did not question her or make known to her the reports about her being a man.

The plaintiff wore a dark purple velvet coat-suit, a man's striped shirt, with a turned down collar, and a four-in-hand necktie. Her hat was of blue velvet, her shoes size eight, and her hair was bobbed. Her dress and size caused the ladies in the rest room to suspect that she was a man.

While Miss Trussel was in the rest room, plaintiff came out, left the building, and walked down the street. Miss Trussel then came out and told Trammel what she had heard the ladies in the rest room say. He got some one else to take up tickets for him and went out on the street to take a look at plaintiff and to satisfy himself as to whether she was a man or a woman, but did not see her.

This man Campbell was in the lobby of the theater and heard the complaint. After the ticket taker had gone out for his investigation, Campbell went out into the street, called a policeman from the opposite side of the street to him and pointed out to him the plaintiff, who was nearly a block away, told him about the complaint, and asked him to tell her he wanted to see her. The policeman overtook plaintiff as she entered, or just after she had entered, a store, and, according to her testimony, touched her on the arm and told her, "You are wanted at the Egyptian Theatre." The policeman testified that he told her the man up at the theater wanted to see her. At any rate, the policeman took her back to the theater and remained with her until Campbell was satisfied that she was a woman.

When she and the policeman went into the theater, Campbell was there and told the plaintiff that complaint had been made that she was a boy dressed in a woman's clothes. The plaintiff then showed him her hand, took off her cap, and

Campbell said, "I am sorry this happened, lady, but we will let it drop."

Plaintiff then left the theater, but returned soon after and inquired for the manager's office. This being pointed out, she went in and found the manager and Campbell in there together. Campbell then explained to the manager what had occurred and the manager said nothing. No apology to the plaintiff, no rebuke for Campbell, nor any statement that Campbell's act or conduct was unauthorized, nor any statement that Campbell was not an employee of the defendant.

At the trial, defendant did not produce Campbell as a witness, but introduced in evidence a photograph of him, taken in front of some other theater, and offered proof that Campbell was not on the pay roll of the Egyptian Theatre, where all this had occurred. It went so far as to take the deposition in New York of its treasurer to prove that Campbell was not on the pay roll of the Egyptian Theatre, but no one says that Campbell was not on the pay roll of the defendant, which operates a chain of theaters throughout the United States, as is admitted by the pleadings. It is passing strange that defendant did not undertake to get Campbell to testify so that he could have given his version of what took place and as to what authority he had to act as he did in this case. Also he could have told on whose pay roll his name would be found. Some of the witnesses thought Campbell was a friend of the driver of what was called the soundwagon, which seems to be an advertising device sent out from the New York office. However, the driver of the soundwagon, admittedly in the employ of defendant, was not called as a witness to testify as to who Campbell was and what rights he had about the theater.

When the policeman brought plaintiff back to the theater, Campbell alone was then apparently, and we think actually, in charge and he proceeded with the investigation.

> No one would question the right and duty of defendant to investigate the complaint, which was of a serious nature, and if the investigation had revealed that

the intruder was a man, then have him arrested and prosecuted.

On Saturday, during the time when the streets were crowded, the plaintiff was taken in charge by a policeman in uniform and conducted through the streets to the theater. The policeman remained with plaintiff during the investigation. To all intents and purposes, this was an arrest. If the policeman was merely the bearer of a message and nothing more, why did he take plaintiff along the streets and remain at the theater?

This case was properly submitted to the jury, and it was fully warranted in concluding that Campbell represented the defendant and acted within the scope of his authority and that his action was approved by the manager.

It is strenuously contended that there was no evidence to sustain a verdict for punitive damages. It would have been an easy matter for Campbell to have overtaken plaintiff and requested her to return to the theater, or to have asked her name and address. This would have enabled him to make a full investigation. The arrest was uncalled for and the conduct of defendant was high-handed and in reckless disregard of plaintiff's rights, causing her needless humiliation. There was no error in refusing the motion for a nonsuit and for a directed verdict as to actual or punitive damages and in refusing a new trial. There was ample evidence to require the submission to the jury for both actual and punitive damages and there was evidence to sustain the verdict of the jury.

After the case for appeal had been completed, other exceptions were served, which will now be considered. The first of these additional exceptions refer to contradictions, when it is contended ground had not been properly laid in that the time and place were not sufficiently called to the attention of the witness. The witness was a policeman and while on the stand, in cross-examination,

counsel for plaintiff asked him, "You made a statement a short time after that to Mr. Putman and this girl here, they came to see you and talked to you about it?" It seems certainly that the time and place were very definitely fixed. The objection to the form of the question is also made, but it seems to us that there is a substantial compliance with the rule and that the questions asked were unobjectionable, and these exceptions are overruled.

There are exceptions to three requests to charge, which were charged by the Court; the error complained of in each of these exceptions is that each of the three requests assumes the vital issues in the action. There is no other objection to the law as charged. The three requests stated good law and we think the appellant is mistaken in thinking they assumed anything.

All exceptions are overruled, and the judgment of the lower Court is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.