PETTY v. PETTY.

1. EVIDENCE—DEEDS—MORTGAGES.—The parol evidence necessary to establish the fact that a deed was intended as a mortgage, must be clear, unequivocal, and convincing.
2. FINDING OF FACT—IBID.—IBID.—The evidence in this case is not sufficient to establish the fact that the deeds were intended as mortgages.

Before WITHERSPOON, J., Spartanburg, July, 1896. Affirmed.

Action by J. C. Petty *v.* C. Q. Petty and Henry Jenkins. Judgment for defendants. Plaintiff appeals.

*Messrs. Bomar & Simpson,* for appellant, cite no cases.

*Messrs. Nichols & Jones,* contra, cite: *Comparison of handwriting is to be resorted to only in doubtful cases:* 5 S. C., 478; 18 S. C., 509. *Finding by master and Circuit Judge should not be disturbed unless against weight of evidence:* 45 S. C., 509; 47 S. C., 347.

March 24, 1898. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. The object of this action was to have certain deeds, absolute on their face, executed by the plaintiff to the defendants, declared mortgages, and to allow the plaintiff to redeem, upon payment of what he claimed to be the mortgage debt. For this purpose, the plaintiff relies entirely upon an alleged parol agreement between himself and defendants to that effect. The Circuit Judge, having reached the conclusion that the testimony was insufficient to establish such parol agreement, rendered judgment dismissing the complaint. From this judgment plaintiff appeals, upon the several grounds set out in the record, which need not be set out here, as they all impute errors to the Circuit Judge in his findings of fact as to various minor issues leading up to his conclusion

upon the main and controlling issue, which is likewise claimed to be erroneous.

Obviously the main and controlling issue in the case is, whether the testimony is sufficient to establish the parol agreement relied upon by plaintiff, and upon which his whole case depends; and it matters little whether there was error in the findings of the Circuit Judge upon the several minor issues of fact which the Circuit Judge discusses in his decree; for, unless the testimony was sufficient to establish the parol agreement relied on, then there was no error in the final conclusion reached or in the judgment rendered. We do not, therefore, deem it necessary to consider *seriatim* these minor issues, but shall confine our attention to what we regard the controlling question in the case—was the testimony sufficient to establish the parol agreement relied on?

As is said in 3 Pom. Eq. Jur., sec. 1196: "Any conveyance of land, absolute on its face, without anything in its terms to indicate that it is otherwise than an absolute conveyance, and without any accompanying written defeasance, contract of repurchase or other agreement, may in equity, by means of extrinsic and parol evidence, be shown to be in reality a mortgage as between the original parties," &c. The principle upon which this doctrine is founded is, that it would be a virtual fraud for the grantee to insist upon the deed as an absolute conveyance, when it was understood at the time to be intended merely as a security and in reality as a mortgage. But, as is further said by the same distinguished author, in the same section: "The presumption, of course, arises that the instrument is what it purports on its face to be, an absolute conveyance of the land. To overcome this presumption, and to establish its character as a mortgage, the cases all agree that the evidence must be clear, unequivocal, and convincing, for otherwise the natural presumption will prevail." See, also, our own case of *Arnold* v. *Mattison*, 3 Rich. Eq., 153, to the same effect. Indeed, the plaintiff's counsel very properly concedes this to be the rule, which seems to be

everywhere recognized, and is based upon the soundest reason; for before a court of equity can be expected to convert a solemn written instrument, under seal, into something very different from what it purports on its face to be, there should be strong evidence to show that such was the intention of the parties to such instrument; to use the language of Johnston, Ch., in *Arnold* v. *Mattison*, *supra*, "the evidence must be very clear and convincing."

In the light of this well settled and apparently universally recognized rule, we propose, briefly, to consider the testimony in this case, for it is not usual, and would serve no good purpose, to go into any elaborate discussion of a question of fact. It appears that some time in December, 1889, the plaintiff, being in embarrassed circumstances, with his land advertised for sale at the next succeeding saleday, applied to the defendants, one of whom was his brother and the other the son-in-law of such brother, for help. It seems that the plaintiff desired to raise the money necessary to relieve his property from the liens resting upon it, for which purpose he represented that it would require about the sum of $1,000, by giving mortgages upon his lands. It seems, however, that while the defendant, Jenkins, may at first have been inclined to advance the money on a mortgage, yet he always qualified his statement to that effect by the condition that his codefendant, Petty, should join with him in doing so. Even in the much disputed letter, marked exhibit O, which will be more particularly hereinafter referred to, he, practically, took that position. But his codefendant, Petty, persistently refused to advance the money on a mortgage. Matters continued in this condition until on or about the 25th of December, 1889, the deeds, which upon their face are absolute conveyances, were executed by the plaintiff to the defendants. The contention on the part of the plaintiff is that, while he admits that he executed the deeds, knowing that they were, on their face, absolute conveyances; yet there was a parol agreement between himself and the defendants that they

were intended to be merely securities for the repayment of
the money advanced by defendants for the plaintiff, and
that defendants were to receive the rents of the land, and
apply the same to the repayment of such advances. The
turning point of the case is, whether the plaintiff has estab-
lished such agreement by "clear, unequivocal, and convinc-
ing evidence," as required by the rule above stated. The
only direct evidence to establish such agreement is found
in the testimony of the plaintiff himself; but certain cir-
cumstances, which will be presently adverted to, are relied
upon by plaintiff to corroborate his direct testimony. On
the other hand, both of the defendants, in their testimony,
emphatically deny that there ever was any such agreement,
and, on the contrary, insist that the transaction was a plain,
straightout purchase, just as the deeds show it to have been.
The person who drew the deeds, and one of the subscribing
witnesses, testify that nothing was said as to any such agree-
ment when the deeds were executed, and nothing to indi-
cate that the deeds were intended to be anything other than
what they purported to be—absolute conveyances. The
plaintiff mainly relies upon two circumstances to support
his direct testimony: 1st. The fact that the consideration
mentioned in the deeds and paid by the plaintiffs was much
less than the real value of the land. There was no little
conflict as to what was the real value of the land—some of
the witnesses estimating it much higher than others, who
estimated it to be worth, at the time, and in the condition
in which it then was, just about the amount which the
defendants paid. This discrepancy may be explained by
the facts, which are undisputed, that at the time this trans-
action took place, the land was burdened with the support
of the plaintiff's mother during her lifetime, and there was
a dispute as to the title to a portion of the land. We do
not think, therefore, that this circumstance was entitled to
much weight. 2d. The next circumstance which is strongly
relied upon by plaintiff, is a letter, marked exhibit O, which
he claims was written to plaintiff by Mrs. Jenkins, the wife

of defendant, Jenkins, under his direction. But the genuineness of that letter is stoutly disputed by the defendants. The alleged writer of that letter, Mrs. Jenkins, emphatically denies that she ever wrote any such letter, and her husband denies that he ever directed his wife to write a letter of any such tenor or purport. The defendants—one the father and the other the husband of Mrs. Jenkins—both testify that they do not believe the letter to be in her handwriting. To prove its genuineness, the plaintiff relies upon the testimony of two witnesses called experts—one the county auditor and the other the county treasurer of Spartanburg County—who do not profess to have any knowledge of the handwriting of Mrs. Jenkins, but base their opinions upon a comparison of the handwriting in the disputed letter with other writings admitted to have been written by Mrs. Jenkins. Inasmuch as the burden of proof is clearly on the plaintiff to prove the genuineness of the letter, it seems to us that he has failed to meet that burden. This does not necessarily involve the belief that the letter is a forgery, but simply that the plaintiff has failed to show by the preponderance of the evidence that the letter was written by Mrs. Jenkins under the instructions of her husband. But even if we could conclude that the plaintiff had shown the letter to be genuine, we do not think it could be regarded as any sufficient evidence of the parol agreement relied upon by the plaintiff. That letter bears date the 12th of December, and the deeds were not executed until about the 25th of December, 1889—about two weeks afterwards. And if, as may be the case, the defendant, Jenkins, was, *at that time*, willing to advance his half of the money upon a mortgage, as the terms used in the letter indicate, it by no means follows that he made any such agreement as that relied upon, about two weeks afterwards—especially when he found that his codefendant, Petty, was unwilling to make any such arrangement. So that the letter is not sufficient to show that even Jenkins made any parol agreement of the kind insisted upon by plaintiff; and certainly it affords no evi-

dence whatever against the defendant, Petty; for even assuming the letter to be genuine, there is not the slightest evidence tending to show that Petty ever knew or heard of any such letter, and none to show that he ever authorized Jenkins to say what the letter attributes to him as having said.   On the other hand, the defendants start out with the presumption in their favor arising from the terms of the deeds themselves, which is aided by the undisputed fact that at the time the deeds were executed, there was nothing said or done indicating that the transaction was intended to be other than what it purported to be upon the face of the deeds, by the fact that defendants went into possession of the lands as their own, had the same transferred to their names on the tax books, and paid the taxes; by the further fact that plaintiff, after executing the deeds, told at least two persons that he had no property except some inconsiderable articles of personal property; that the plaintiff himself rented the lands from the defendants—which of itself was an acknowledgment of their title—and *gave his note* for the amount of the rent, instead of taking a receipt from defendants for so much paid them on account of the amount which they had advanced, as would have been the most natural course, if the transaction really was what he now claims it to have been.   There is also another circumstance in favor of defendants which is not without weight.   If the arrangement between the parties really was what the plaintiff now claims that it was, why were absolute deeds, instead of mortgages, given?   No reason has been suggested either in the testimony or in the argument, and it is difficult to conceive of any.   It seems incredible that any sane man would deliberately make absolute conveyances of his property, for an amount which he now claims was much less than its value, without taking some precaution to secure some evidence, at least verbal if not written, that such conveyances were not intended to be what they showed upon their faces, but were intended simply as mortgages.   And yet that is the position which the plaintiff occupies.   Noth-

ing was said at the time the deeds were executed indicating that they were intended to be other than what they purported to be—no witness was introduced to prove any such parol agreement as that relied upon by the plaintiff, except himself—no writing of any kind was introduced to prove the alleged agreement, except a letter, the genuineness of which was disputed, but which, if genuine, only tended to show that, about two weeks before the transaction was actually entered into, one—not both—of the defendants was willing to enter into such an arrangement as that upon which the plaintiff relies, but which does not show that such arrangement was actually entered into. But without pursuing the examination of the testimony, which has been carefully considered, we are bound to say that we agree with the Circuit Judge, that the plaintiff has failed to establish the parol agreement upon which he relies.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.