### 16083

JONES v. EICHHOLZ ET AL.
(48 S. E. (2d) 21)

412

*Messrs. Behling & Behling* and *St. Clair Muckenfuss, Jr.,* of St. George, for Appellants,

*Messrs. J. D. Parler* and *St. Clair Muckenfuss, Sr.,* of St. George, and *Mr. E. M. Parler,* of Lancaster, for Respondent,

May 25, 1948.

BAKER, C.J.: This is an action in equity to have an instrument in writing, appearing on its face to be a deed, regular in form, declared to be in fact a mortgage, said written instrument bearing date, October 10, 1938, and being from the respondent, Mabel Holmes Jones, to one of the appellants, Bernard B. Eichholz; and for certain incidental relief relevant to the foregoing. Involved, is a tract of land in Dorchester County containing eighty-six (86) acres. On July 30, 1941, Eichholz conveyed the land in question to the appellant, R. E. Burkholder, Jr., who claims to be an innocent purchaser for value without notice of any defect in the title of Eichholz.

The complaint of the respondent (plaintiff) in addition to alleging that the deed she executed to the appellant, Eichholz, was intended as a mortgage to secure him for the payment of certain outstanding indebtedness represented

by a mortgage over the land here involved which she had executed to one, W. T. Brown, alleged that when Eichholz conveyed this land to Burkholder, the latter knew the terms and conditions under which the former held the legal title to same, and that the deed to the former was intended to be and was in fact a mortgage, and that both of the appellants (defendants) were engaged in a scheme and plan to overreach her and to trick, defraud and swindle her out of her tract of land. And the complaint further alleged that there should be an accounting to ascertain. what balance, if any, the respondent (plaintiff) was due the appellant, Eichholz, on her mortgage to him, which appeared on its face, as aforesaid, to be a deed.

The answer of the appellant Eichholz is more or less a general denial of the material allegations of the complaint with an affirmative declaration to the effect that the deed to him is a regular and absolute deed in fee simple for which he paid ample consideration; that it does not constitute a morgtage and was not intended as such; that he purchased the premises in good faith and had the legal right to sell and convey the premises to his co-appellant Burkholder, and was paid the full purchase price for the premises.

The appellant Burkholder, in his answer, also denied the material allegations of the complaint, his principal defense being based upon allegations that he is an innocent purchaser for value without notice, paying the full value of the land to Eichholz, after title investigation by competent attorneys had disclosed that his co-appellant was seized and possessed in fee simple of the premises; that he is in possession of the land and has been since July 30, 1941, paying the taxes, and expended large sums of money in making improvements thereon.

The case was referred to the Master of Dorchester County to hear and determine all issues of law and fact and two references were held, one on March 21, 1945, and one on September 17, 1945, at which references testimony was intro-

duced in behalf of respondent and appellants, but appellants did not attend either reference. The Master, in his Report, found against the respondent, and from this Report an appeal was taken to the Circuit Court and heard by Judge M. M. Mann, who, in a strong decree, reversed the Master in every particular.

It should be noted at this point that the issue of the remaining indebtedness, if any, of the respondent to Eichholz, upon the trial of the case in the court below, became so obscured by the other issues, that it could be said to have ceased to exist as an issue. However, the Circuit Judge held that the indebtedness had been paid in full, and we will hereafter make further reference to this phase of the case.

The two predominant issues arising out of this appeal are: (1) Was the instrument of writing, on its face a deed, in fact intended as a mortgage, and (2) was the appellant, Burkholder, an innocent purchaser for value, without notice?

The established law in this State governing the first issue is clearly set forth in *Petty v. Petty,* 52 S. C. 54, 29 S. E. 406, from which we quote:

"As is said in 3 Pom. Eq. Jur., § 1196: 'Any conveyance of land, absolute on its face, without anything in its terms to indicate that it is otherwise than an absolute conveyance, and without any accompanying written defeasance, contract of repurchase, or other agreement, may, in equity, by means of extrinsic and parol evidence, be shown to be in reality a mortgage as between the original parties,' &c. The principle upon which this doctrine is founded is that it would be a virtual fraud for the grantee to insist upon the deed as an absolute conveyance, when it was understood at the time to be intended merely as a security and in reality as a mortgage. But, as is further said by the same distinguished author in the same section: 'The presumption, of course, arises that the instrument is what

it purports on its face to be,—an absolute conveyance of the land. To overcome this presumption, and to establish its character as a mortgage, the cases all agree that the evidence must be clear, unequivocal, and convincing, for otherwise the natural presumption will prevail.' See, also, our own case of *Arnold v. Mattison,* 3 Rich. Eq., 153, to the same effect. Indeed, the plaintiff's counsel very properly concedes this to be the rule, which seems to be everywhere recognized, and is based upon the soundest reason; for, before a court of equity can be expected to convert a solemn written instrument under seal into something very different from what it purports on its face to be, there should be strong evidence to show that such was the intention of the parties to such instrument. To use the language of Johnston, Ch., in *Arnold v. Mattison, supra,* "The evidence must be very clear and convincing.' "

It is sufficient to state that the law as above quoted has been consistently followed in subsequent cases coming before this Court. A citation of these cases is unnecessary as it would only tend to convert this opinion into a digest.

This issue requires a discussion of the testimony, beginning as of the date that the property was acquired by respondent, which was on October 5, 1931, and for a consideration of $299.50. The respondent failed to pay the taxes for some year or years prior to 1936 as they became due and, in November of 1936, the property was sold by the Sheriff for delinquent taxes, purchased by a third party, who in turn reconveyed the premises to respondent in December of 1936, for a consideration of $33.10 (probably the amount of the delinquent taxes, plus costs.) On October 2, 1937, the respondent mortgaged the property to W. T. Brown, to secure an indebtedness of $213.80 and it is this indebtedness that is the focal point of the controversy. The maturity date of this mortgage was October 2, 1938, and according to respondent, in September of 1938 Mr. Brown began to ask for the payment of his money, whereupon re-

spondent consulted appellant, Eichholz (both of whom were living in Savannah, Ga.), and requested him to pay the mortgage, which he agreed to do. (It afterwards appeared that Mr. Brown was interested in the payment of a chattel mortgage due him by the respondent.) Respondent further related that on October 10, 1938, she and Mr. Eichholz went to see Mr. Brown, and at that time, either in the yard or in Mr. Brown's office, Mr. Eichholz stated, "I will pay Mr. Brown, but I will not pay him and hold the mortgage. If you will give me a deed to secure me, then I will pay it, but I will not pay it and hold a mortgage." Respondent then said if she had to give a deed to secure the money she would do so, to which Mr. Eichholz replied, "I do not want the property. I only want a deed to secure my money until you can pay me back." This conversation was had in the presence of a Mr. Coleman who came there with Eichholz. The parties, accompanied by Mr. Brown, then went to the law offices of Messrs. Behling & Behling, in St. George, S. C., and consulted with Mr. John Henry Behling, Sr. Up to this point the testimony of the respondent is uncontradicted as to what she said to Mr. Eichholz and what this appellant told her. This uncontradicted testimony by respondent has a very vital bearing on the case in that this evidence was given at the first reference held on March 21, 1945, and after hearing additional testimony, on the same date, the reference was adjourned until further notice and completed on September 17, 1945. Appellant, Eichholz, was not present at either reference and his failure to appear at the second reference certainly tends to lend credence to respondent's version as to what transpired between her and Eichholz before going to the offices of Messs. Behling & Behling; and also as to the conduct and statements of Eichholz thereafter. Respondent declares that while in the office of the attorneys just named, for the purpose of a deed being prepared, so that she could execute same and thus secure Mr. Eichholz for the money he was to pay out in taking up the real estate mortgage then held by Mr. W. T.

Brown, Eichholz stated: "Gentlemen, you all know that I am not buying this woman's property. I am only taking this deed to secure me for the money I am paying on this mortgage." The consideration expressed in the deed as prepared was $10.00 and the assumption of a mortgage from respondent to W. T. Brown, recorded in Book 38, page 108, Dorchester County. The late Honorable John Henry Behling, Sr., vigorously denied that any such statement as above set forth was made in his office, and we of course accept as a fact that Mr. Behling did not hear it, if made by Eichholz; and Mr. W. T. Brown, who was present, did not recall hearing this statement, but would not positively deny that Eichholz made it.

At the time the respondent executed a deed to the appellant, Eichholz (October 10, 1938), the property conveyed had a value of $1,000.00. There was due on the mortgage covering this property to W. T. Brown approximately $213.00. Respondent also owed Mr. Brown a balance of between $50.00 and $75.00 on a chattel mortgage. This chattel mortgage was paid by Eichholz, but no payment was made to Mr. Brown by him on the real estate mortgage. In May, 1939, Eichholz told the respondent that Mr. Brown was demanding the payment of his mortgage, and she became so alarmed, that she arranged with Freemount Park, a money lending corporation in Savannah, Ga., to take over the mortgage from Mr. Brown. The testimony discloses that at this time Mr. Brown was not demanding payment of his mortgage, and at first refused to accept payment of the mortgage and assign it to Freemount Park Corporation. After Freemount Park took an assignment of the mortgage from Mr. Brown, the respondent paid this concern $162.00 thereon, and under an agreement she had with the Freemount Corporation there was no amount past due to it at the time Eichholz, after making several trips to its office, persuaded this corporation to assign the Brown mortgage to him, upon the payment to it of the balance due on the said mortgage.

Eichholz later marked this mortgage satisfied, although the respondent makes no claim to having paid him any part of same in cash.

When the respondent, fearing from what had been told her by Eichholz that she was in danger of losing her property, induced Freemount Corporation to take up the Brown mortgage, she paid the expenses of a representative (a Mr. Robinson) of Freemount, from Savannah, Ga., to St. George, S. C., to investigate and handle the matter with Mr. Brown, amounting to $25.00, and which sum is not included in the $162.00 heretofore mentioned as paid by her to Freemount Park Corporation. And as a further circumstance tending to show that the respondent and Eichholz considered the deed in question as a mortgage, the respondent in 1939 sold timber from the land without objection on the part of Eichholz; and Mr. Brown assigned his mortgage to Freemount Corporation only after he had obtained the consent of Eichholz for him to do so. Morever, prior to the time Eichholz conveyed the property to his co-appellant, Burkholder, he informed the respondent that he had offered to sell the property to Burkholder for $600.00, and was going to sell it, and that out of the sale he was going to give her $100.00 whereupon the respondent inquired of Eichholz what she owed him $500.00 for. This, Eichholz was unable to explain, and there is no suggestion in the testimony that Eichholz at that time claimed to be the absolute owner of the land under the deed from respondent to him. If such had then been his position, it would have been unnecessary for him to give any notice to the respondent that he was going to sell the property to Burkholder, and/or to give her $100.00 of the sale price. It should here be stated that the respondent being ignorant of her rights in the premises, accepted $10.00 from Eichholz, but upon receiving advice thereabout, refused to accept any further portion of the $100.00, although a lawyer by the name of

Hopkins (presumably representing Eichholz) undertook to have her do so.

The evidence we find in the record to sustain the position of Eichholz that the deed to him from the respondent was not intended as a mortgage, but was what it purported to be on its face, is the testimony of the late John Henry Behling, Esq., who prepared the deed, that he did not knowingly prepare this deed, or any other deed, which was intended as a mortgage; that no reference was made in his office in his presence that the deed he was employed to prepare was to have the effect of a mortgage only; and that the respondent told him to make a deed. We accept the testimony of Mr. Behling, without question. In addition to the testimony of Mr. Behling, is the admitted fact that Eichholz, following the execution of the deed by the respondent, went into the possession of the lands involved through a tenant who was occupying same, paid all taxes as they became due, and never demanded of the respondent a refund.

The writer hereof did not have the pleasure of knowing the late John Henry Behling, Sr., but he was well known by Judge Mann, the author of the decree from which this appeal is prosecuted, and we think it proper to here record that portion of Judge Mann's decree which directly refers to Mr. Behling:

"Mr. Behling was a lawyer of ability and great energy. His integrity was beyond question. No word that I would utter would in the least be allowed to reflect upon his splendid name. When Mr. Behling said that he was assured that the deed was a bona fide instrument, that is complete assurance to the Court of the truth of that statement. Eichholz knew that Behling would draw no deed under misrepresentations, or with ambiguous meaning. That was a matter that he knew to keep from the knowledge of Mr. Behling, and Mr. Behling's testimony shows that clearly."

We have weighed carefully the testimony and circumstantial evidence in this case, and have reached the conclusion that Judge Mann did not err in holding that the deed from the respondent to Eichholz, while regular in all respects, was intended by the respondent as a mortgage only to secure him for any money he advanced to her, and was so accepted by the appellant, Eichholz, at the time of the transaction, and for a long while thereafter; and, of course, the rule followed by this Court is that a paper that is "once a mortgage is always a mortgage."

We have been influenced in this conclusion by the fact that Eichholz, with full knowledge of the testimony of the respondent taken at the first reference, failed to avail himself of the privilege of appearing at the second reference, held approximately six months thereafter, to contradict *any* of the statements made by the respondent in her testimony. And by the further fact that every circumstance, *sans* one which will hereafter be mentioned, points convincingly that the respondent was at all times greatly concerned over the possibility that she was going to lose this land. If she had understood that she had parted with all interest in her tract of land, she would not thereafter have negotiated with Freemount Park Corporation to take up the Brown mortgage, and would not have paid to this corporation $162.00 on the mortgage. She would not have questioned the right of Eichholz to sell and convey this land to the appellant, Burkholder, at any price he saw fit. And last, but not least, she would not in the beginning have conveyed to Eichholz a tract of land of the value of from $860.00 to $1,000.00 for a total consideration as claimed by Eichholz 'of not more than $325.00.

The only circumstance which tends to weaken the respondent's position is the length of time she waited to commence her action to set aside the deed from Eichholz to Burkholder, and to have her deed to Eichholz declared a mortgage. She consulted several lawyers in Savannah, Ga.,

about such action without success, and we are not advised as to how long it took her to convince her South Carolina lawyers that she had a meritorious case, such as would justify them in making as serious a charge as necessarily had to be made in order for the respondent to have any standing in Court.

We now come to the second issue, that is, whether the appellant, Burkholder, was an innocent purchaser for value, without notice.

> In *Kirton v. Howard*, 137 S. C. 11, 36, 37, 134 S. E. 859, 868 (followed in *Cook v. Knight*, 173 S. C. 278, 175 S. E. 506), it is said:

"* * * To entitle one to take advantage of the plea that he is a purchaser for value without notice, it is necessary for him to show three things: (1) That the purchase money was actually paid before notice of outstanding incumbrances or equities (giving security for the payment is not sufficient, nor is past indebtedness a sufficient consideration); (2) that he has purchased and acquired the legal title, or the best right to it, before notice of outstanding incumbrances or equities; and (3) that he purchased *bona fide* without notice. (Citing authorities.) * * * One cannot successfully interpose this defense, where the circumstances are sufficient to put one upon inquiry, or where one might by due diligence have ascertained the facts. One is charged with notice of every fact which such inquiry and such diligence will certainly disclose." (Citing authorities.)

It will therefore be perceived that the burden rested upon Burkholder to establish all three of the above essential prerequisites.

> In deciding this issue, we are content to point out that there is no testimony in the record that the appellant, Burkholder, at any time, paid to his co-appellant, Eichholz, the purchase price of the land involved.

It would serve no purpose and only unnecessarily prolong this opinion to discuss whether the record discloses that Burkholder had notice of the outstanding equity of respondent in this land prior to accepting a deed therefor from Eichholz; and whether the transaction between the appellants was *bona fide*.

The third issue, which we have heretofore stated became so obscured by the two predominant issues hereinabove decided that it practically ceased to exist, is: Did the Circuit Judge err in holding that the indebtedness of the respondent to the appellant, Eichholz, secured by the mortgage (deed) in controversy, had been paid in full?

The record lacks sufficient information for us to intelligently pass upon this issue. While it could be said with justification, notwithstanding the pleadings, that the appellant, Eichholz, heretofore had every opportunity of proving the remaining indebtedness, if any, of the respondent to him, after accounting for the use and occupation of the premises for the time he has been in the possession thereof, yet, this being an equity case, we have concluded to remand it so that further testimony may be taken on this issue if said appellant so desires, and a new holding, in the light of such testimony, made by the Circuit Court, conditioned however upon this appellant promptly taking steps and diligently pursuing to have this issue determined; otherwise the judgment is affirmed as to this issue also, and the land freed of the lien of the mortgage. And in any event, under the facts and holding in this case, the appeal costs on this appeal are directed to be taxed in favor of the respondent and against the appellants.

It therefore follows, that subject to the foregoing, the judgment is affirmed. Let the order of Judge Mann directing a re-conveyance of the land to the respondent, and the placing of her in the possession thereof, become effective im-

424

mediately upon the filing of the remittitur herein in the office of the Clerk of Court for Dorchester County.

Affirmed, and remanded specially.

FISHBURNE, STUKES, TAYLOR, and OXNER, JJ., concur.