16954

LUCILLE MUNGO EVANS, Respondent, v. W. C. EVANS, Appellant

(85 S. E. (2d) 726)

*Messrs. Leppard & Leppard,* of Chesterfield, *for Appellant,*

*Messrs. LeRoy M. Want*, of Darlington, and *H. F. Bell*, of Chesterfield, *for Respondent*,

February 1, 1955.

TAYLOR, Justice.

On or about the 21st day of August, 1950, Respondent brought this action against Appellant, her husband, to recover possession of certain properties. The complaint states that on or about the 4th day of March, 1948, she was the owner of a certain residence in Pageland, South Carolina; that she was at that time in possession thereof and continued as such until January 24, 1950, when Appellant unlawfully gained possession of said premises and has continued to withhold same from Plaintiff. She seeks judgment

for the return of said premises, $500.00 damages for the withholding of said premises, and $350.00 damages for the use and occupation thereof, costs, and etc.

Appellant, by way of answer, entered a general denial and as a further defense plead that on March 4, 1948, and prior thereto, he was seized in fee and lawfully held possession of the property in question; that on that date an agreement was entered into between Respondent and Appellant whereby Respondent agreed to pay a certain mortgage indebtedness and taxes then past due and to pay, as they became due and payable, future installments on the mortgage debt and the accruing taxes, in consideration of which, Appellant agreed to convey the property to Respondent as security for the repayment of such funds then advanced and to be advanced by Respondent. The answer further sets forth that in pursuit of such agreement the property was conveyed to Respondent in the form of a "warranty deed in fee simple" but was by agreement and intention of both parties only a mortgage to secure Respondent for such monies as she might pay out under the agreement; that upon the repayment of such monies, Respondent would reconvey the premises to Appellant. The prayer for relief is that the amount due Respondent by Appellant under such agreement be adjudicated and that upon payment of such sums Respondent be required to reconvey the premises to Appellant; that the aforementioned deed and the record thereof be cancelled and for general relief.

The case was by agreement referred to the Master for Chesterfield County "to hear and determine all issues of law and fact." The Master filed his report in which he concluded that Appellant had established his defenses and recommended the relief prayed for in the answer.

The single exception to the Master's report is "* * * that the findings and recommendations were and are contrary to the law governing the case and the testimony taken therein."

For one reason or another the matter did not come before the Circuit Judge until April, 1953, when Respondent

delivered to Judge Lewis and served upon opposing counsel copies of her brief. On July 15, 1953, Appellant delivered to Judge Lewis and counsel for Respondent a memorandum of the cases upon which he relied. Judge Lewis issued his Order August 17, 1953, reversing the findings and conclusions of the Master.

The principal question for determination by this Court is whether or not the conveyance of the property made by Appellant to Respondent, his wife, was given for the purpose of transferring title to her or was given merely as security for advances for accrued and future installments of an outstanding mortgage indebtedness and for accrued and accruing taxes.

In order for Appellant to prevail in his contention, he must overcome the presumption that the instrument is what it purports on its surface to be—an absolute conveyance of the land—and such presumption must be overcome by evidence that is clear, unequivocal, and convincing; otherwise, the natural presumption will prevail, *Petty v. Petty,* 52 S. C. 54, 29 S. E. 406.

Having executed the deed with all the formalities attendant here, he will not be permitted to impeach such on the sole ground that the consideration was inadequate, there being an absence of fraud or collusion. He was bound in law and morals to support his wife and child, and being unable or unwilling to meet the mortgage payments and taxes, we attach no suspicion to the conveyance to the wife whereby the payments were made on the mortgage and the past due taxes paid, thereby saving the home from foreclosure.

In *Brown v. Brown,* 44 S. C. 378, 22 S. E. 412, 414, this Court used the following significant language:

"* * * Having thus executed the deed with all these formalities, it would not lie in his mouth, nor would he be permitted, if alive, to impeach his deed under seal, on the sole ground that it was without consideration. It was binding on him, in the absence of fraud or collusion; and these

defendants, who claim through him as his heirs at law, could acquire no higher equity nor any greater rights in the premises than their intestate. * * * Besides, the husband is bound in law as well as in morals to maintain and support the wife, and after his ability to provide a support for the wife has become impaired (as is charged in this case) by being addicted to the habit of strong drink, we can see no reason why he should not be permitted to deed to the wife an interest in his real estate, and thereby enable her to earn for herself that support which the law enjoins upon the husband. For the foregoing reasons, the first and second exceptions are overruled." See also *Bates v. Bates,* 213 S. C. 26, 48 S. E. (2d) 612; 41 C. J. S., Husband and Wife, § 146; *All v. Prillaman,* 200 S. C. 279, 20 S. E. (2d) 741, 159 A. L. R. 981; *Caulk v. Caulk,* 211 S. C. 57, 43 S. E. (2d) 600.

Respondent at the time was living with Appellant as wife and husband. She testified unequivocally that the deed was absolute with no promise to repay; that Appellant had allowed the building and loan payments to become nine months in arrears. The testimony further reveals that the building and loan company, not wishing to foreclose, had repeatedly urged that these payments be brought up to date and finally asked that a conference be held on the matter at the office of the mortgagee in Cheraw, and as a result of Respondent's efforts to save the home from foreclosure, the conveyance in question was made. The testimony to the contrary came from Appellant himself and persons whose information was derived primarily from him; but there is no evidence that Appellant made any effort, whatsoever to save the property from the threat of foreclosure, and such evidence as there is relative to the terms of the alleged agreement to reconvey is of a very general nature and unconvincing. Appellant not only signed the instrument under attack but also a building and loan transfer card stating that he had sold the property to Respondent. The taxes and insurance were paid either by Respondent or by funds provided by her. The property was thereafter

listed in Respondent's name on the tax books, and Appellant offers no satisfactory explanation of why he executed a deed when he allegedly intended to execute a mortgage.

The Master in his report recommending that Appellant be granted the relief sought stated that "the evidence is none too clear" but arrived at his conclusion thus, stating, "I think it a fair inference * * *.".

In *Petty v. Petty, supra,* this Court used the following language:

"As is said in 3 Pom. Eq. Jur. § 1196: 'Any conveyance of land, absolute on its face, without anything in its terms to indicate that it is otherwise than an absolute conveyance, and without any accompanying written defeasance, contract of repurchase, or other agreement, may, in equity, by means of extrinsic and parol evidence, be shown to be in reality a mortgage as between the original parties,' etc. The principle upon which this doctrine is founded is that it would be a virtual fraud for the grantee to insist upon the deed as an absolute conveyance, when it was understood at the time to be intended merely as a security and in reality as a mortgage. But, as is further said by the same distinguished author in the same section: 'The presumption, of course, arises that the instrument is what it purports on its face to be,—an absolute conveyance of the land. To overcome this presumption, and to establish its character as a mortgage, the cases all agree that the evidence must be clear, unequivocal, and convincing, for otherwise the natural presumption will prevail.' See, also, our own case of *Arnold v. Mattison,* 3 Rich. Eq. 153, to the same effect. Indeed, the plaintiff's counsel very properly concedes this to be the rule, which seems to be everywhere recognized, and is based upon the soundest reason; for, before a court of equity can be expected to convert a solemn written instrument under seal into something very different from what it purports on its face to be, there should be very strong evidence to show that such was the intention of the parties to such instrument. To use the language of Johnson, Ch., in *Arnold v. Mattison,*

*supra,* 'The evidence must be very clear and convincing.' "
See also, *Jones v. Eichholz,* 212 S. C. 411, 48 S. E. (2d)
21; and *Reid v. Gambill,* 125 S. C. 187, 118 S. E. 308.

As heretofore indicated, we are of the opinion that this
question must be resolved against the contention of Appellant.

Appellant also contends that the exception "* * *
the findings and recommendations by the Master
were and are contrary to the laws governing the case
and the testimony taken therein" is too general to justify a
review of the Master's report. The case was instituted in
August, 1950, and argued before the Master in July, 1951;
the exception to the Master's report was made on November 23, 1951, and on February 2, 1952, or approximately
three months later, Appellant served notice that he would
move before the Judge for a trial "on the issues raised by
Plaintiff's exceptions." A similar motion was thereafter
served February 16, 1952. Respondent's counsel also served
notices to have the case heard at various times, but nothing
was done until July 15, 1953, when it was agreed that each
party would file briefs with the resident Judge; and Appellant in his brief for the first time raises the question of the
insufficiency of the exception.

In view of the foregoing, we are of the opinion that Appellant was not in position to raise the question of insufficiency of the exception, for the first time, in his brief, and
that his conduct relative thereto was such as to amount to
a waiver of the question of its form.

For the foregoing reasons, we are of the opinion that all
exceptions should be dismissed, and It Is So Ordered.

Affirmed.

STUKES, OXNER and LEGGE, JJ., and G. BADGER BAKER,
Acting Associate Justice, concur.