13824

GANTT *ET AL.* v. BELK-SIMPSON CO.

(174 S. E., 1)

Before Oxner, J., Greenville, June, 1932.

*Messrs. D. W. Smoak* and *Morgan & Cothran,* for appellant,

*Mr. J. Robt. Martin, Jr.,* for respondent,

April 6, 1934.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action for damages on account of certain alleged slanderous words spoken of and concerning the plaintiff, Mary Gantt. The delict charged, to which the defendant interposed a general denial, is set out in the complaint in the following language: "That the defendant, Belk-Simpson Company, operates on South Main Street, in the City of Greenville one of its numerous department stores to which it invites the public for the purposes of trade, and on Saturday, December 5th, 1931, the plaintiff, Mary Gantt, in compliance with outstanding invitation of the defendant, entered its said store for the purpose of purchasing merchandise thereat and after looking at some articles offered by said defendant for sale, and upon going into another department upstairs of its store was by agent and servant of the defendant accused of having secreted on her person, underneath her clothing, articles of merchandise stolen from the defendant's store, by repeatedly and publicly asking plaintiff, 'What did you put under your coat?', thereby directly, by insinuation and innuendo, accusing the plaintiff of the crime of theft; that the acts and words publicly spoken concerning the plaintiff were slanderous and maliciously and wantonly spoken and tended to disgrace and degrade the honor of plaintiff, Mary Gantt, and to hold her up to public hatred, contempt and ridicule."

The case was tried on June 20, 1933, in the Court of Common Pleas for Greenville County; Judge G. Dewey Oxner presiding. The jury found for the plaintiff, Mary Gantt, actual damages in the sum of $1,750.00. W. L. Gantt, her husband, alleged to be "merely a formal party" to the action,

did "not claim damages for himself," and will not be referred to again.

At the beginning of the trial, in response to the usual inquiry as to relationship, a Mr. Lowe, one of the jurors, stated that Mary Gantt was the sister of his brother's wife. Counsel for defendant then suggested that they thought it would be within the Court's discretion, in the circumstances, to excuse the juror, and asked that that be done. The Judge, however, ruled that Lowe was not disqualified, as he was not related to the plaintiff, either by blood or marriage; and that, further, if he should excuse him, as only twenty jurors were present for service, it would necessitate suspending the Court for several hours. But he indicated that he would put Lowe on his *voir dire,* if counsel so desired, for the purpose of determining, it seems, whether the juror for any reason was prejudiced against the defendant company. Nothing came of the suggestion, however, as counsel did not indicate their wishes in the matter, and Lowe was left on the panel.

The appellant, defendant below, now complains (Exceptions 1 and 2) that the trial Judge abused his discretion in permitting Lowe to act as a qualified juror in the circumstances named. We are not in accord with this contention. It is not disputed that, under the facts disclosed, the Court correctly held that Lowe was not related to the plaintiff, either by blood or marriage, and could not, therefore, be properly excluded by reason of kinship. Of course, the inference drawn by the appellant is that Lowe favored the suit of the plaintiff because she was the sister of his brother's wife. If counsel believed this to be true, they should have taken advantage of the Court's offer to put the juror on his *voir dire* in order to determine the question; and their failure to do so must have indicated to the Court that they were satisfied. While the presiding Judge properly desired to go on with the trial of the case, it is undoubtedly true that if he had thought or had been shown that Lowe was prejudiced, for the reason indicated by the appellant, or for any

other reason, he would have promptly excused him, despite the fact that it might have necessitated the delay of the trial for several hours. This assignment of error is clearly without substantial merit.

At the conclusion of the testimony the defendant moved for a directed verdict, but before the motion was argued counsel for plaintiff asked the Court to be allowed to put up a witness in reply "as to the temperament" of the plaintiff. The Court permitted this to be done, stating, however, that the examination could go no further than indicated. One T. J. Hughes was then sworn, who testified that Mrs. Gantt had worked in his department at the Monaghan Mill for over two years, and that he had seen her daily and knew her temperament; that she was "very calm," and did "not exhibit a spirit of ill will or spitefulness."

By its third exception, the appellant imputes error to Judge Oxner in permitting this witness "to testify as to new matter after the case had been closed."

We think the wide discretion allowed the Circuit Judge in such matters was here properly and legally exercised. While the testimony is not printed in full, the following appears in the record: "The testimony of Defendant admitted that lady clerk reported matter to Garrett, on ground floor, of woman acting queerly and in a nervous and unusual manner and that Garrett went upstairs for the purpose of an investigation and investigated the matter, but denied making the slanderous remarks attributed to him, but, on the contrary, claims that the woman became hysterical and in her excitement ran some fifty feet from him and with outstretched hands shouted that she did not have anything and claimed that Garrett was accusing her of stealing and then and there demanded that he (himself) searched her."

It seems to us that what Hughes testified to was in direct reply to the above testimony of the defendant. In any event, the trial Judge, who heard all of the evidence, held that it was in reply, and we cannot say from the record before us that he was wrong.

The plaintiff asked that the jury be instructed as follows: "Retention of agent in similar employment subsequent to acts complained of may be considered on the question of ratification by principal of acts complained of against agent."

In response to the request, the Court said: "I charge you that, Mr. Foreman and gentlemen of the jury, in connection with what I am going to say now; that the retention by the Master of the agent in its employ is not ratification as a matter of law; that in itself as a matter of law is not ratification, but where such an agent is retained, if he is retained, the retention of such an agent, after knowledge of the commission of the acts complained of, may be considered by the jury along with all the other evidence in the case on the question of ratification."

The appellant contends (Exception 4) that the trial Judge was in error, both in charging the request and in his comments thereon, for the reason that "the retention in employment of an agent after knowledge of the commission of certain acts is not, as a matter of law, any evidence of ratification of said acts by the principal."

In *Knight v. Motor Car Company,* 108 S. C., 179, 93 S. E., 869, 870, L. R. A., 1918-B, 151, where a similar question was considered, the Court observed that "there are cases which rightly hold that under some circumstances the retention of the servant after the event is evidence of approval of the event." In *McFadden v. Motor Company,* 121 S. C., 407, 114 S. E., 402, 403, relied on by the appellant, the trial Judge charged the jury that retention by the master of the servant in his employment after knowledge of all the facts was not only evidence of ratification, but was ratification. On appeal the judgment was reversed by a divided Court. Three Justices held that the charge did not state the correct rule of law, Mr. Justice Fraser concurring in the result "on the ground that the retention of the driver was only evidence from which ratification might be inferred, and not ratification as a matter of law."

It will be observed that in the case at bar Judge Oxner charged the jury that the retention by the master of the agent or servant who committed the wrong after knowledge of the commission of the acts complained of was not a ratification of such acts by the master as a matter of law, but might be considered by the jury along with all the evidence in the case on the question of ratification. It would seem that, under the decisions cited, the Court, in effect, stated the correct rule prevailing in this jurisdiction.

But even if it should be thought that we are wrong in this, which we do not concede, there was no reversible error. In the *Knight case* it was held that "the master is liable without such approval, if the act was done by the servant while about the master's business." In *Sparkman v. Supreme Council,* 57 S. C., 16, 35 S. E., 391, 397, the Court stated that, "if the act was within the scope of the agency, and was done by the agent while exercising those powers, there was no necessity for ratification." In the case at bar it is admitted that Garrett, the agent and servant of the defendant, was "acting in the capacity of master's representative at the time" the alleged delict was committed.

The defendant requested that the jury be instructed: "That no one would question the right of the Defendant to make a full investigation upon complaint being made is fully settled by the case of *Whitmire v. Publix Theatre Corporation,* 164 S. C., 487, 162 S. E., 753. I, therefore, charge you that if a reasonable complaint were made to the Defendant in this case, it was not only the right of the Defendant but its duty to make a reasonable investigation."

The Court, however, charged the request in the following modified form: "The Defendant has handed up two requests to charge. The first request is with reference to the right of a business or corporation to investigate complaints; and instead of charging that request in the language that it is given in here, I charge you this, Mr. Foreman and Gentlemen of

the jury, that in the case of a corporation, or for that matter any other business, where a complaint is made as to something that has transpired in connection with the operation of the business or in the place of business, that the corporation or other business, through its officers or agents, would have a right to make an investigation of such a complaint so long as such investigation was made in a lawful manner and no injury was done to a third person."

Counsel for plaintiff then stated that he thought the words "or to his character," should be added at the end of the charge as given, and in response to this suggestion the Court said: "Yes, sir. In other words, Mr. Foreman and gentlemen of the jury, as I say, they would have a right to investigate a complaint as long as it was done in a lawful manner, but in the course of such investigation such a concern would not be permitted to do a wrong, whatever the wrong may be, to a third party. Of course, that would include injury to person or injury to character or any other wrong."

By Exceptions 5 and 6, the appellant alleges that the Court committed error (1) in refusing to charge its requests as made, and (2) in adding to the instruction given the words, "or to his character," as this modification of the request, "in effect, nullified the right and duty of the defendant to investigate."

In *Whitmire v. Publix Theatre Corporation,* 164 S. C., 487, 162 S. E., 753, 754, cited by the appellant in support of its contentions, the plaintiff, who went into the ladies' rest room of the theater, "wore a dark purple velvet coat-suit, a man's striped shirt, with a turned down collar, and a four-in-hand necktie. Her hat was of blue velvet, her shoes size eight; and her hair was bobbed. Her dress and size caused the ladies in the rest room to suspect that she was a man." On complaint an investigation was made and the alleged intruder, who in the meantime had left the building, was taken in charge by a policeman at the instigation of

a representative of the defendant. This Court, under the facts above stated, said: "No one would question the right and duty of defendant to investigate the complaint, which was of a serious nature, and if the investigation had revealed that the intruder was a man, then have him arrested and prosecuted."

It will be observed that in the *Whitmire case* no general rule was laid down that it would be the defendant's duty in every case to investigate a complaint made. The quoted statement of the Court, relied on by the appellant, does not so hold, but merely has reference to the peculiar facts of that case. That a defendant—a business of any kind—has a right to investigate complaints is not open to argument; but whether a duty to do so rests upon it, or its employees, is necessarily determined by the nature of the complaint, who may be affected by it, etc. Clearly, then, it might be its duty to do so in one case and not in another. We are of opinion, therefore, that the trial Judge properly refused, as requested by the appellant, to instruct the jury that it was defendant's duty, as a matter of law, if the complaint made was a "reasonable" one, to investigate it.

Nor do we think there is merit in the contention that the words added at the end of the instructions given had the effect claimed by the appellant. The Court charged that while the defendant had a right to make an investigation of the complaint, it was bound to do so in a lawful manner and in a way that no wrong would be done to a third person, which included injury to character. The charge was a fair statement of the law, and gave to the appellant all that it was entitled to.

The judgment below is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM concur.