16233

FAGAN v. TIMMONS
(54 S. E. (2d) 536)

*Messrs. Harold C. Seigler and F. Ehrlich Thomson,* of Columbia, for *Appellant,*

Messrs. *John S. Nicholson and Nelson, Mullins & Grier,* of Columbia, *for Respondent,*

Messrs. *Harold C. Seigler and F. Ehrlich Thomson,* of Columbia, *for Appellant, in reply,*

June 27, 1949.

As corrected on Denial of Rehearing, July 29, 1949.

BAKER, Chief Justice.

The appellant states the "Question Involved" to be: "Is there sufficient real, material, pertinent and relevant evidence to support the judgment of the lower Court?"

It is alleged that the trial Judge erred in overruling the motion of the appellant for a nonsuit for that the respondent wholly failed to produce any evidence to prove that the trespass complained of was committed by her; and further, that the trial Judge erred in overruling the motions for a direc-

tion of verdict in her behalf, and for judgment *non obstante veredicto* for that the only reasonable inference to be drawn from all of the testimony is that the alleged trespass was committed not by the appellant, but by another party.

We need, of course, discuss only whether the trial Judge erred in refusing to grant the motion of the appellant for a direction of verdict in her behalf.

On December 17, 1945, in contemplation of getting married, the respondent leased and rented from the appellant a furnished apartment, the same being apartment 5-B in an apartment house situate at 3104 Monroe St., Columbia, S. C., paying to the appellant in advance the sum of One hundred and thirty ($130.00) Dollars as rental covering the period of eight weeeks, or ending on February 10, 1946. He was also required to leave with appellant the sum of $4.00 as key deposit for the key to the apartment. The apartment consisted of one room in which it was necessary to eat, sleep and live, a kitchen and a bath, and was called an "efficiency apartment." The respondent was required to pay the rental in cash, a check for $120.00 thereof being refused for the then stated reason that the appellant did not have time to go have the check cashed. Nothing was said to indicate that the respondent was not renting a furnished apartment, or that the appellant did not own the furniture in the apartment. The receipt for the rent which the appellant gave to the respondent did not specify the amount paid.

The respondent became suspicious as to the appellant's failure to stipulate in the receipt the amount of rent paid, and went to the Office of Price Administration to inquire what the rent for this particular apartment should be. There he learned that the rental ceiling of this apartment was $50.00 per month as a furnished apartment, and on an unfurnished basis, $30.00 per month. (This was testified to by the employee in charge of the O. P. A. office in Columbia.) As a result of instructions received from the O. P. A. the respondent requested a second receipt from the appellant, rep-

resenting that he had lost the first receipt, but the amount of the rental paid did not appear on the duplicate receipt which the appellant gave to him. As a result of further instructions from O. P. A., respondent then entered suit against the appellant for the overpayment of rent and penalty, which case was settled by the appellant here paying some amount.

On February 9, 1946, and by reason of instructions from the O. P. A., the respondent tendered to the appellant $50.00 for the next month's rent, and while she wouldn't accept the money she kept saying, "I am not refusing the rent." The same day the respondent and his wife when leaving the apartment, thoughtlessly or carelessly left the key thereto in the apartment, and when they closed the door they automatically locked themselves out. The appellant resided in the same apartment house, so the respondent asked her if she would use her pass-key to let them back into their apartment. This she refused to do on that day, but informed him that she would do so on the next day, "because that's when you are up." (Incidentally the respondent, with the aid of another party who had an apartment in this apartment house, gained entrance to his apartment through a window opening on a porch.)

Nothing occurred in reference to the occupancy of this apartment by the respondent and his wife on the 10th of February, but a couple of days later, the appellant came to the apartment and informed the respondent (and his wife) after the opening remark, "Are you still here," that she was checking on the furniture. She merely stepped inside and surveyed the premises because she could see all of the furniture from where she was standing.

Some few days later, alleged in the complaint to be February 19th, upon the respondent (and his wife) returning to their apartment, at about 7 o'clock P. M., although the door to their apartment was then locked just as it had been left that morning, the respondent discovered when he unlocked the door thereto and entered, that the furniture in the

living-dining-bedroom had been removed therefrom, and his personal belongings and wearing apparel and that of his wife had been piled up in the middle of the floor. There was no evidence of a break-in, and the only way the furniture could have been removed was through the door. Respondent went to the apartment of the appellant and inquired of her: "Where is the furniture out of our apartment?" The appellant replied, "The one that owns it took it." She registered no surprise, but appeared to be thoroughly satisfied about the removal of the furniture.

By reason of having no furniture in the apartment, the respondent and his wife were forced to move out of the apartment, and thus it is alleged, the appellant effected an eviction.

The respondent's complaint was bottomed upon the afore-stated facts, as testified to by him and his witnesses upon the trial of the case, paragraph 7 thereof reading as follows:

"That plaintiff is informed, and believes, and alleges, that the aforesaid unlawful breaking and entering into his apartment, and the removing of the furniture and disturbing of plaintiff's possessions was done by, or under the direction and supervision, or at the instigation of the defendant, A. M. Timmons, because of her anger and frustration on plaintiff's refusal to pay black market rent, and that the unlawful, high-handed, imperialistic and uncivilized manner in which she caused plaintiff's dwelling to be broken into and entered, his furniture removed and his rights invaded, was in keeping with defendant's purpose, and scheme of forcing plaintiff, against his will, to pay black market rent."

The answer of the appellant denied each and every allegation of the complaint not specifically admitted. Practically the only allegation admitted was that she had leased to respondent the apartment, but for a period of only eight weeks. It further set out the alleged condition upon which the lease could be extended. And answering specifically paragraph 7 of the complaint, the answer alleged:

"Answering the allegations contained in paragraph 7 of the complaint, the defendant alleges that she only rented to the plaintiff for a period of eight weeks an unfurnished apartment; that she had no furnished apartments for rent and rented no furnished apartments to anyone; that she owned no furniture at that time or at any time subsequent thereto; that the defendant is informed and believes that the plaintiff rented from some other person or party the furniture placed in the unfurnished apartment which he rented from this defendant; that the defendant specifically denies that she or her servants or agents or anyone else acting for her or in her behalf or under her direction and supervision or at her instigation entered the plaintiff's apartment which this defendant rented to him as an unfurnished apartment and removed therefrom the furniture or disturbed the plaintiff's possessions; that this defendant did not own the furniture placed therein and had nothing to do with nor any interest in the removal of said furniture from the unfurnished apartment which she rented to the plaintiff."

It is unnecessary to detail the testimony in behalf of the appellant, although it should be stated that she produced direct and positive testimony supporting the allegations contained in her answer, and particularly the paragraph thereof above reproduced. However, it is the duty of the trial Judge in passing upon motions for non-suit, for direction of verdict and for judgment *non obstante veredicto* to construe the testimony and the reasonable inferences to be drawn therefrom, most favorable to the opposing litigant (the respondent here).

The cause of action was for a willful trespass. One need not personally commit the trespass in order to become liable therefor, since if one authorizes, advises, encourages, procures, or incites another to commit a trespass, then such one is liable, as is, of course, also the actual perpetrator.

While the evidence connecting the appellant with this trespass was entirely circumstantial, as against positive evidence to the contrary, yet carefully weighing all of the evidence, we have reached the conclusion that a reasonable inference could be drawn therefrom that the appellant not only instigated the trespass and co-operated therein, but that the party who actually committed the trespass was the agent of the appellant, and that it was therefore the duty of the trial Judge to submit the case to the jury.

Petition for rehearing denied.

Judgment affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.