## 17019

JOHNNIE JOHNSON, Appellant, v. LIFE INSURANCE COMPANY OF GEORGIA and H. P. STEWART, Respondents

(88 S. E. (2d) 260)

*Messrs. James P. Mozingo, III,* and *John L. Nettles,* of Darlington, and *C. Ray Parrott,* of Florence, *for Appellant,*

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Respondent, Life Insurance Co. of Georgia,*

June 15, 1955.

LEGGE, Justice.

Appellant sued in the court of common pleas for Darlington County to recover damages, actual and punitive, because of slander alleged to have been committed by the defendant Stewart in the course and scope of his employment as agent of the defendant Life Insurance Company of Georgia. At the close of all testimony the motion of the corporate defendant for direction of a verdict in its favor was refused. The jury rendered a verdict against both defendants for $25,800.00 actual and $10,000.00 punitive damages. The defendants then separately moved for judgment notwithstanding the verdict or, alternatively, for a new trial. Thereafter Judge Henderson issued his order granting the corporate defendant's motion for judgment and granting a new trial as to the defendant Stewart unless the plaintiff remit $5,800.00 of the verdict for actual damages and all of the verdict for punitive damages. That order, from which this appeal is taken, rests, as to the corporate defendant, upon the finding by the learned circuit judge that there was no evidence from which the jury could reasonably have concluded that Stewart, in making the slanderous statement attributed to him, was acting within the scope of his employment. In this aspect of the appeal, therefore, we shall consider the testimony and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff's case. *Thompson v. Rutland*, 225 S. C. 485, 83 S. E. (2d) 163; *Fagan v. Timmons*, 215 S. C. 116, 54 S. E. (2d) 536.

The plaintiff, in addition to policies with other companies, had two policies with the defendant, one providing for payment of $1,000.00 in the event of death and also for the payment of $500.00 for the loss by severance of one foot at or above the ankle joint, and the other being a 20-payment life policy in the amount of $50,000.00, with provision for waiver of premiums in the event of total dis-

ability. On March 28, 1950, both of these policies being then in force, plaintiff suffered the accidental loss of his left leg. The defendant company, after having made investigation, made settlement with the plaintiff under the first mentioned policy on December 20, 1951, paying to him the dismembership benefit, $500.00, and marking the policy as paid up. On January 14, 1952, the date of the alleged slander, the matter of waiver of premiums on the $50,000.00 policy was in controversy with respect to the furnishing of the required proofs.

The defendant Stewart was an agent of Life Insurance Company of Georgia in its industrial insurance business, with authority to collect premiums and to solicit insurance. During his period of employment with the company, about seven years, he worked the same "debit", which covered portions of Darlington, Kershaw and Chesterfield counties. On this "debit" lived Mr. and Mrs. James Easterling, who operated a grocery store and filling station some five miles north of Hartsville, in Darlington County, and about three miles from the residence of the plaintiff, whom they had known for some twenty years, and who occasionally stopped at their store to make small purchases. The Easterlings, who carried two industrial policies with the defendant company, testified that on January 14, 1952, Stewart came to their store and in the course of collecting the premiums on their policies asked Mrs. Easterling if she and her husband were ready to increase their insurance. She replied: "No, the ones we have may not be no good. Why haven't they paid off Johnnie Johnson's claim?" Stewart then said: "Because he shot his leg off on purpose. He shot his leg off on purpose to collect this insurance company's money. He had stolen the insurance money from the other companies, but he wasn't going to steal it from this company."

Stewart had had nothing to do with either of the two policies which the plaintiff, Johnnie Johnson, had with the defendant company. Johnson was not on Stewart's debit nor had Stewart ever worked that debit for any other agent.

At the time of the alleged slander Stewart and Johnson did not know each other. Stewart had had nothing to do with the investigation of Johnson's claim by the company, or with the payment of the claim. His testimony that at the time of the alleged slander he knew nothing about Johnson's claim against the company, is uncontradicted. It is undisputed that the claim had been paid more than three weeks prior to the date of the alleged slander.

■ In numerous decisions of this court, extending over nearly half a century, the principle has been affirmed that in order to hold a corporation liable for a slander uttered by its agent it must appear that the latter was at the time acting within the scope of his employment and in the actual performance of the duties of the corporation touching the matter in question.

In *Hypes v. Southern R. Co.,* 82 S. C. 315, 64 S. E. 395, 396, 21 L. R. A., N. S., 873, it appeared from the complaint that the plaintiff, a locomotive engineer of the railway company, had turned in a time report showing the number of hours he had worked during the previous month; that his claim had been disallowed to the extent of $37.00; and that later, in an interview with the division superintendent for the purpose of adjusting the claim, the division superintendent had said in the presence of several people, " 'I am going to stop you fellows from stealing from the company' " and had called the plaintiff a "thief." The judgment of the lower court, overruling the demurrer to the complaint, was affirmed, the court saying: "In the case at bar the complaint shows a contract relation between the corporation and the person slandered, and that the slander was in reference to a matter growing out of such relation, a dispute as to the correctness of plaintiff's claim for wages, *a matter within the duty of the agent to adjust."* (Emphasis ours.)

And so in *Nunnamaker v. Smith's,* 96 S. C. 294, 80 S. E. 465, demurrer to the complaint was held to have been properly overruled where one who was the president, treasurer

and general manager of the corporate defendant, and in. charge of its store, was alleged to have slandered the plaintiff, a clerk by accusing her of shortage in her sales-receipts cash.

Similarly, in *Lee v. McCrory Stores Corp.*, 117 S. C. 236, 109 S. E. 111, we held that the general manager of a chain store, in sole charge of its local business, was acting within the scope of its authority in charging an employee with theft.

So also in *Jenkins v. Southern R. Co.*, 130 S. C. 180, 125 S. E. 912, the corporate defendant was held liable for a slanderous statement concerning a shipper made by its station agent whose duty it was to handle such shipments and safeguard the interests of the railroad concerning them.

And in *Mann v. Life & Casualty Ins. Co. of Tennessee*, 132 S. C. 193, 129 S. E. 79, where, in the course of an address before a meeting of the company's agents, Smith, the district superintendent, made a slanderous statement concerning a former agent who had left the company's employ, but whose account with the company was in process of being adjusted by Smith, the court's adherence to the same principle is shown by the following excerpt from the opinion:

"Smith was at the meeting called by him in the actual discharge of his duty to the company. He was speaking of the agents' duty to the company, urging them to collect balances due the company on the various debits, charging them with honesty and loyalty to the company. Smith's testimony shows that his address to the agents was in the discharge of his duty to the company. The testimony shows that Smith was adjusting the accounts of debits between the company or Hollingsworth and Mann. Mann had left the employment of the company at the time the alleged slanderous remarks were made, but he had not had a final settlement with the company. There was evidence to submit it to the jury for their determination whether Smith's remarks were made about Mann and there was some evidence of ratification to go to the jury. Smith is still in the

employment of the company. * * * A master is liable for the slander uttered by his servant if at the time of uttering the slander the servant was engaged in the discharge of his duties intrusted to him in reference to the particular matter in hand and acting within the scope of his employment."

In the *Mann case* the plaintiff obtained a verdict against both the insurance company and Smith, and the trial judge set it aside and ordered a new trial as to the insurance company, refusing to disturb it as to Smith. From this order the plaintiff appealed, contending, *inter alia*, "that the judge erred in construing the law to be that there was no liability on the part of the defendant, the insurance company, because its employee, Smith, had been entrusted with no duty in regard to Mann, who had left the company's employ before Smith came to Columbia, unless the company ratified Smith's acts, and that there was no evidence that the company had knowledge of the incident or had ratified the same." On appeal, this court, speaking through Mr. Justice, later Chief Justice, Watts, was unanimous in reversing the trial judge's order granting a new trial to the insurance company; and the language of the opinion as quoted above leaves me in no doubt as to its reasoning.

On petition by the insurance company for rehearing, a majority of the court concurred with Mr. Justice Cothran in holding that the statement in the original opinion, to the effect that retention of Smith in the company's employ was evidence of ratification, should be stricken out as inapplicable under the facts of the case and unnecessary to the determination of the appeal, there being no evidence that the master had knowledge of the tort; and the original opinion was modified accordingly. In the course of his order on the petition for rehearing, Mr. Justice Cothran said:

"The liability of the corporation for the alleged slander is based, not upon the fact that Smith was at the time engaged in some matter of business between Mann and the corporation, but in a matter of business between Smith and

the corporation, the instruction of subordinate agents under his supervision. In this view of the matter it was immaterial whether the corporation ratified the slander or not. The above statement as to the ratification was therefore unnecessary to a determination of the appeal. In other respects I adhere to my concurrence and think that the petition should be dismissed."

Bearing in mind that the order on the petition for rehearing appears to have been concerned only with the matter of ratification, I do not interpret the portion just quoted as intended to repudiate the original opinion except insofar as it related to that matter, or to enlarge the field of corporate liability for slander beyond the limitations laid down by Mr. Justice Cothran himself in *Courtney v. American Ry. Express Co., infra.* Rather it seems to emphasize the suggestion in the original opinion that in his address to the agents on loyalty and honesty in the handling of their debits Smith was acting within the scope of his employment and in the performance of duties intrusted to him by the corporation which were connected with the subject-matter of the alleged slander.

In *Turner v. Montgomery Ward & Co.,* 165 S. C. 253, 163 S. E. 796, it appears to have been conceded, and in *Gantt v. Belk-Simpson Co.,* 172 S. C. 353, 174 S. E. 1, it was admitted, that the store manager who made the alleged slanderous statement was acting in the capacity of "master's representative" at the time. In *Lily v. Belk's Department Store,* 178 S. C. 278, 182 S. E. 889, no issue was raised as to whether the clerk who uttered the slander was at the time acting within the scope of his employment and in the performance of his duty to the corporation in connection with the subject matter of the slander. Nor was such issue involved in *Merritt v. Great Atlantic & Pacific Tea Co.,* 179 S. C. 474, 184 S. E. 145.

In *Tucker v. Pure Oil Co. of the Carolinas,* 191 S. C. 60, 3 S. E. (2d) 547, 551, where the defendant's zone manager

made the slanderous statement complained of, to the effect that the plaintiff, who had formerly operated a filling station of the defendant, had been short in his accounts, it was pointed out that at the time of the publication of the alleged slander the plaintiff had not been discharged, and the zone manager was at that time in possession of the filling station and engaged in " 'checking him out'." To quote briefly from the opinion: "The conversation took place before the incident of discharge had been closed; and there is evidence tending to prove that at the time Ingram was engaged in the performance of a duty committed to him by the Company in connection with Tucker's employment or discharge; and that he had authority to make a statement with reference to the matter on behalf of the company. In other words, in making the statements imputed to him, Ingram was acting, as an agent of the company, within the scope of his authority."

And in *Murden v. Atlantic Greyhound Corp.*, 207 S. C. 145, 35 S. E. (2d) 33, 34, where the slanderous words were spoken of a woman in a lunch room of the bus station by the agent of the corporate defendant in charge of the premises, the court reaffirmed the principle that " ' a corporation is liable for slander uttered by its agent only while acting within the scope of his employment and in the actual performance of the duties of the corporation touching the matter in question'."

In practically identical language, the same principle is set forth as the general rule in 5 Thompson, Corporations, 2d Ed., par. 5441, and in Fletcher, Cyclopedia Corporations, Permanent Ed. par. 4888.

It is equally well settled that a corporation is not liable for slander spoken by its employee concerning a matter or incident between the corporation and the person slandered where such matter or incident has, prior to the alleged slander, been closed and ended. In the leading case of *Courtney v. American Ry. Exp. Co.*, 120 S. C.

511, 113 S. E. 332, 333, 24 A. L. R. 128, it appeared that the plaintiff, a special agent of the express company, had been charged with filing a fraudulent expense account; that the matter had been investigated by one Park, a route agent of the company; and that as the result of such investigation the plaintiff had been discharged. Two weeks thereafter, Park, while at a railroad station waiting for a train, engaged in conversation with one Munnick, a special agent of the company, and in the course of the conversation, discussing Courtney, Park said to Munnick: " 'We fired him like we would an ordinary thief'." This statement was overheard by a bystander, and Courtney thereafter sued the company and Park for slander. Judgment for the plaintiff was reversed on appeal, the court saying:

"In the next place, it does not appear, and in the nature of things, the incident of discharge being closed, could not appear that at that time Park was engaged in the discharge of any duty committed to him by the company, in connection with Courtney's employment or discharge. It was at most a personal opinion of Park as to a matter that was ended and with which he at that time had absolutely no connection. Certainly it could not be said that the company had intrusted him with any duty in connection with it; and, assuming that he was there at the depot engaged in some business with which he had been intrusted, his wrongful act could not be imputed to the company unless that business was connected with the subject-matter of the alleged slander."

In *Bosdell v. Dixie Stores Co.,* 168 S. C. 520, 167 S. E. 834, 837, the action was brought by the plaintiff, formerly a clerk in one of the defendant's stores, for libel based upon a letter from the vice-president and secretary of the company to Campbell, the store manager, charging inferentially that Bosdell was responsible for a shortage and advising Campbell to discharge him, which had been done. On the issue of publication the plaintiff offered, *inter alia,* the testimony of a witness who, after Bosdell's discharge, had had a con-

versation with Campbell in the store, in which the witness had asked where Bosdell was, to which Campbell had replied that he (Campbell) had received a letter from the company stating that there had been a shortage and advising him to get rid of Bosdell. As to this testimony the court said: "We are of opinion that this was not a publication by the defendant of the alleged libelous communication. The conversation took place some time after the incident of the discharge had been closed; and it is not made to appear that Campbell at the time was engaged in the performance of any duty committed to him by the company in connection with Bosdell's employment or discharge, or that he had any authority to make any statement with reference to the matter on behalf of the defendant. In other words, in making the statements imputed to him, Campbell was not acting, as an agent of the company, within the scope of his authority."

In support of his contention that in the case at bar Stewart was acting within the scope of his authority and in furtherance of the business of his principal, the corporate defendant, appellant urges that Stewart was trying to sell the Easterlings additional insurance, and also to induce them to keep the policies that they already had and as to which Mrs. Easterling had expressed some doubt, and that in the circumstances his authority to answer Mrs. Easterling's question as to why the company had not paid Johnnie Johnson's claim is fairly to be implied from the nature of his employment and the duties incident to it; and as authority for this position he cites *Wisemore v. First Nat. Life Ins. Co.*, 1938, 190 La. 1011, 183 So. 247. In that case Wisemore, an agent of Federal Health and Accident Company, was in the place of business of one Dudley and was in the act of writing Dudley's application for a sick and accident insurance policy with that company, when one Hill, an agent of First National Life Insurance Company, came into the place for the purpose of collecting from the Dudleys premiums on their policies with his company, as he regularly did, and also for the purpose of obtaining their application

for additional insurance. When Dudley told Hill that he did not care to pay any more premiums on his policy, but was going to let it lapse, because he could get a better contract with Federal Health and Accident Company through its agent Wisemore, Hill denounced Wisemore as a thief, and stated that he had been discharged by First National Life Insurance Company for stealing, and that he, Hill, would beat him up if he ever again caught him at the home or place of business of any of Hill's regular customers. Under these facts, the majority of the Louisiana court held that the slander by Hill was within the scope of his authority and in the performance of his duties as agent of the defendant.

Another similar case is *Waters-Pierce Oil Co. v. Bridwell,* 1912, 103 Ark. 345, 147 S. W. 64, 66, Ann. Cas. 1914B, 837. There the plaintiff, Bridwell, an agent of Indian Refining Company, alleged and offered evidence tending to prove that a salesman of the defendant, Waters-Pierce Oil Company, had gone to one of Bridwell's customers and told him that the oil sold by Bridwell would not stand the test prescribed by Arkansas law, and that both Bridwell and his customers were subject to indictment for selling his oils. Judgment in favor of the plaintiff was affirmed on appeal, the court holding that whether the slander had been uttered in the course and scope of the agent's employment was, under the evidence, a jury question. Said the court: "The issue of whether authority to utter the slander should be implied becomes one of fact for the jury, where the facts and circumstances in proof would induce a reasonable person to infer that the act is within the scope of the agent's authority; but if only one inference should be drawn from the evidence, and that is a want of authority, the question becomes one of law for the court".

Respondent contends that the *Wisemore case* is distinguishable from the case at bar because in the former the slander was uttered by Hill in an attempt to destroy the competition being advanced by the plaintiff Wisemore, and

had to do solely with the sales portion of the defendant company's business, in which Hill was engaged, whereas in the case at bar the slander related to the adjustment of a claim, with which the agent Stewart had nothing to do. This argument, which would apply perhaps more forcibly to the *Bridwell case*, is obviously unsound as to both. In the Wisemore case the subject of the slander was the alleged discharge of Wisemore for stealing, and in the *Bridwell case* it was the alleged criminal liability of Bridwell for selling oil of a grade prohibited by law. In short, if we are to reject the reasoning of the Louisiana court in the *Wisemore case* and that of the Arkansas court in the *Bridwell case,* we must do so because such reasoning conflicts, as I think it does, with the long-settled rule in this state hereinbefore discussed.

In *Hand v. Industrial Life & Health Ins. Co.,* 1936, 174 Miss. 822, 165 So. 616, 617, an action for slander, the facts alleged were substantially similar to those of the *Wisemore case.* On appeal the judgment of the lower court sustaining a demurrer to the declaration was affirmed, the court, in discussing the phrase " ' "scope of the employment" ' ", quoting with approval the statement in A. L. I., Restatement, Agency, Section 229(1), that " ' "the ultimate question is whether it is just that the loss resulting from the servant's acts should be considered one of the normal risks of the business in which the servant is employed" ' ", and, in Section 229(2) of the same chapter, that in determining whether or not the conduct of the servant, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of the employment, one of the matters of fact to be considered is " ' " whether or not the master had reason to suspect that such will be done." ' "

In discussing the rule that in order to hold a corporation liable for slander uttered by its agent it must appear that the agent was at the time acting within the scope of his employment and in the actual performance of the duties of the corporation "touching the matter in question", appellant suggests that in the case at bar the "matter

in question" was not the honesty or fraudulency of Johnnie Johnson's claim, but why and how Mrs. Easterling's policies were valuable. With this suggestion I cannot agree; the phrase "touching the matter in question" as used in the oft-repeated statement of the rule means "concerning the subject-matter of the slander",—here, the allegedly fraudulent claim of the plaintiff-appellant.

Nor do I find merit in the suggestion that the slanderous statement made by Stewart was in furtherance of the business of the corporate defendant and consequently within the scope of Stewart's employment. There is nothing in the record here from which it may reasonably be inferred that the usual and customary duties of Stewart, which were to solicit insurance and collect premiums, implied also authority to speak for the company about the Johnson claim, with which he had had no connection, and which, although he didn't know it, had already been settled and ended. Nor am I persuaded by the argument that the slanderous statement attributed to Stewart was calculated to retain the confidence and goodwill of the Easterlings as policyholders and to induce them to increase their insurance. From the inquiry concerning the claim it must have been apparent that they were friends of Johnson, and Stewart's erroneous statement that his claim had not been paid, coupled with the slanderous remark concerning him, cannot reasonably be said to have been in the interest of the company or in furtherance of its business. A comparable suggestion was made in *Great Atlantic & Pacific Tea Co. v. Majure,* Miss. 1936, 176 Miss. 356, 167 So. 637, 639. There the store manager, in response to the inquiry of several customers as to why the plaintiff, a former clerk, had been discharged, replied that he had been discharged because of a shortage. It was argued for the plaintiff that the slander was uttered in furtherance of the company's business because if the clerk's friends were not furnished an explanation for his discharge they would go elsewhere to trade. The court, in disposing of this suggestion, said:

"We cannot conceive how a jury of reasonable men would suppose that a slander uttered against a friend of customers would be thought by a sensible person to be a means of holding those friends as customers; and, besides, so far as concerns the argument last stated, the principal ought not to be held to an anticipation of an action on the part of an agent so devoid of common sense as that would be".

Even if Stewart had had any authority concerning the investigation or settlement of the Johnson claim, it would have terminated with the settlement, and the company would not have been liable for his subsequent slanderous statement thereabout. *Courtney v. American Ry. Exp. Co., supra; Bosdell v. Dixie Stores Co., supra.*

I find no merit in the contention that the matter of the Johnson claim was still open at the time of the slander because of the pending controversy concerning waiver of premiums under the $50,000.00 policy. There is nothing in the record warranting the inference that this controversy (with which incidentally, Stewart had no concern) in anywise involved the subject of the slander.

Exceptions 14, 15 and 16 require but brief discussion. The first two charge that the trial judge erred in sustaining objection by counsel for the defendants to testimony of the plaintiff to the effect that after the loss of his leg it was necessary for him to hire help in his farming operations, and to "deal with more people". As the trial judge correctly pointed out in ruling upon several objections to questions by plaintiff's counsel along this line, the issue before the court was not the effect of plaintiff's accident, but the effect of the alleged slander, upon his relations with other people. By exception 16, appellant contends that there was error in refusing to permit his wife to testify that her social standing had been impaired as the result of the slander uttered concerning her husband. This testimony was properly excluded as irrelevant, but the witness was permitted to testify that since the alleged slander "the people just don't associate with us like they used to". We find no error here.

As additional ground to sustain Judge Henderson's order granting judgment for the corporate respondent *non obstante veredicto,* or failing in this, to order a new trial, counsel for that respondent contend: "That the trial judge erred in permitting counsel for the appellant to argue to the jury, over objection of counsel for the respondent Life Insurance Company of Georgia, that the defendant, Stewart, heard from the defendant company that the plaintiff shot his leg off to collect his insurance, or words to this effect, when there was no evidence to sustain this deduction or inference, which error, but for the granting of judgment for respondent Life Insurance Company of Georgia *non obstante veredicto,* would have required the granting of a new trial, the error being that there was no evidence in the testimony to sustain such deduction or inference." This contention is not appropriate under Section 7 of Rule 4 as an additional ground "upon which this Court will be asked to sustain the rulings or judgment below", for it relates in fact to the corporate respondent's alternative motion for a new trial, upon which the lower court did not rule. We shall consider it, therefore, not under the rule, but in relation to the further proceedings for which the case must be remanded.

In the course of argument, counsel for appellant said: "I think this, Mr. Stewart is an agent of the company, he went there and he had heard these things and I think there is certainly the inference that he had heard them from his company". Counsel for the corporate respondent objected to this argument "because there is not any testimony in this record that he had heard anything from the company;" whereupon the trial judge ruled as follows: "No, sir; I don't think there is any direct testimony, but I do think that counsel has a right to argue their deductions to the jury. Of course, the jury will understand that those are the inferences or deductions of counsel and not direct testimony in the case".

Control of the arguments of counsel rests in the discretion of the trial judge, and considerable latitude is generally allowed in the matter of drawing and arguing inferences and deductions from the evidence. *Wix v. Columbia Mills Co.,* 110 S. C. 377, 96 S. E. 616; *McLane v. Metropolitan Life Ins. Co.,* 154 S. C. 366, 151 S. E. 608; 88 C. J. S., Trial, § 181, p. 356. The inference suggested by counsel in his argument, while possibly erroneous, was not so foreign to the evidence that to permit the suggestion constituted reversible error, particularly in view of the trial judge's remarks to the jury thereabout.

I am convinced that the judgment of the lower court in favor of the corporate defendant should be affirmed for the reasons hereinbefore indicated. In the opinion of a majority of the court, however, whether or not Stewart in uttering the alleged slander was acting "within the scope of his employment and in the actual performance of the duties thereof touching the matter in question" was, under the evidence, a jury question; and, the jury having resolved it in favor of the plaintiff, the order of the trial court setting the verdict aside as to the corporate defendant must therefore be reversed.

It is apparent from Judge Henderson's order that, having granted the motion of the corporate defendant for judgment notwithstanding the verdict, he did not pass upon its alternative motion for a new trial. This alternative motion was based upon the same grounds that were urged in support of the motion for judgment and that had been urged in support of the corporate defendant's motion for direction of verdict, namely: that there was no evidence that the corporate defendant had authorized, acquiesced in, or ratified the slander, or that Stewart was at the time of the slander acting within the scope of his employment; and in addition, upon the further grounds: (1) that the trial judge erred in permitting plaintiff's counsel to argue to the jury that Stewart had heard from the insurance company that the plaintiff had shot his leg off to collect his

insurance, and (2) that the verdict was excessive. What has been already said forecloses all of these grounds except the last; and since the record does not disclose whether or not the trial court would have granted the motion for new trial on that ground, had the motion for judgment *n. o. v.* been denied, the motion for new trial must be reinstated as to that ground alone, and the cause remanded for consideration by the trial judge of that ground of the motion. *Burns v. Babb,* 190 S. C. 508, 3 S. E. (2d) 247; *Trustees of Wofford College v. City of Spartanburg,* 201 S. C. 315, 23 S. E. (2d) 9; *Johns v. Town of Allendale,* 204 S. C. 44, 28 S. E. (2d) 533; *Jones v. Eichholz,* 212 S. C. 411, 48 S. E. (2d) 21; *Crusade v. Capital Transit Co.,* D. C. Mun. App. 1949, 63 A. (2d) 878, 8 A. L. R. (2d) 229; *Bartron v. Northampton County,* 1941, 342 Pa. 163, 19 A. (2d) 263; *Montgomery Ward & Co. v. Duncan,* 311 U. S. 243, 61 S. Ct. 189, 85 L. Ed. 147.

By Exception 11 appellant contends that the trial judge, in his order granting a new trial *nisi* as to the defendant Stewart, erred in requiring remission of so much of the amount of the verdict for actual damages as was in excess of $20,000.00, and all of the verdict for punitive damages. The trial judge has wide discretionary power to reduce the amount of a verdict which in his opinion is excessive, and his judgment, in the exercise of that power, will rarely be disturbed. *Weatherford v. Home Finance Co.,* 225 S. C. 313, 82 S. E. (2d) 196. But this power has its limitations, and does not extend to striking down *in toto* a verdict that has support in the evidence. *Mack v. Life & Casualty Ins. Co. of Tenn.,* 171 S. C. 350, 172 S. E. 305; *Cubbage v. Roos,* 181 S. C. 188, 186 S. E. 794. We find no abuse of discretion in so much of Judge Henderson's order as reduced the amount of the verdict against Stewart for actual damages to $20,000.00. But in our opinion it was manifest error of law, under the evidence in this case, to order a new trial unless the plaintiff should also remit the entire amount of the verdict against Stewart for punitive damages. The

statement imputed to Stewart was slanderous *per se,* and that fact alone was sufficient to justify a verdict for punitive damages. *Fitchette v. Sumter Hardwood Co.,* 145 S. C. 53, 142 S. E. 828; *Smith v. Dunlop Tire & Rubber Co.,* 186 S. C. 456, 196 S. E. 174. We cannot say from the record, however, what disposition the trial judge would have made of the respondent Stewart's motion for new trial based upon alleged excessiveness of the verdict had he been advertent to the fact that he was without power to strike the entire amount of punitive damages; and it would be manifestly unjust, therefore, to affirm his order as to actual damages and reinstate the verdict for punitive damages.

As to the respondent Life Insurance Company of Georgia, the judgment of the lower court is reversed, the motion for a new trial is reinstated to the extent that it is grounded upon alleged excessiveness of the verdict, and the cause is remanded for consideration by the trial judge of that ground of the motion. As to the respondent H. P. Stewart, it is reversed, and the cause is remanded for further consideration by the trial judge, in the light of the principles before stated, of the motion for a new trial upon the alleged ground that the verdict was excessive.

Reversed and remanded.

BAKER, C. J., and STUKES, TAYLOR and OXNER, JJ., concur.

OXNER, Justice (concurring).

As pointed out in the foregoing opinion, a majority of the Court is of the view that the trial Judge erred in granting the corporate defendant's motion for judgment *non obstante veredicto.* We desire to briefly state our reasons for this conclusion.

We do not question the general rule, to which this Court has consistently adhered, that in order to hold a corporation liable for a slander uttered by its agent, it must appear that the latter was acting within the scope of his employment and in the actual performance of the duties

thereof touching the matter in question. But we are not in accord with the restricted interpretation sought to be placed upon it. After stating the rule, it is said in Insurance Law and Practice by Appleman, Volume 16, Section 8901, page 362: "An insurance company is thus liable for the slanderous words of its agent if the agent at the time is transacting the business of the corporation, and the words are spoken in the course of such business and in conection therewith." As authority for this statement, the distinguished author cites several of our decisions.

In the leading case of *Courtney v. American Ry. Exp. Co.,* 120 S. C. 511, 113 S. E. 332, 333, 24 A. L. R. 128, this Court, speaking through Mr. Justice Cothran, said: "After much discussion and great divergence of opinion, it may be regarded as settled by practical unanimity of text-writers and decided cases, that slander is in the same category with all other malicious torts, and that a corporation may be liable for it as well as for any of the others, under like circumstances." In the Cyclopedia of the Law of Private Corporations by Fletcher, Permanent Edition, Volume 10, page 403, it is stated without reservation that according to the better rule a corporation "is liable where the slander is uttered by its servant or agent within the scope of his employment and in the performance of his duties while prosecuting or transacting the business of the corporation."

Applying the foregoing principles to the fatcs of the instant case, we think it may be reasonably inferred that the defamatory words were uttered by Stewart "within the scope of his employment and in the performance of his duties while prosecuting or transacting the business of the corporation." He was transacting the business of the corporation and the words were spoken in connection with the business in which he was then engaged. His duties were to collect premiums on policies already issued and to sell additional insurance. While endeavoring to discharge the latter duty, an inquiry was made by the person solicited as to the failure of the company to pay the Johnson claim. The alleged defamatory

language was used in response to this question. It was for the jury to say whether Stewart was then endeavoring to promote the corporation's business. It cannot be said as a matter of law that he stepped aside from his duties and volunteered a slanderous statement wholly for his own purposes. It is true that the Johnson claim had been paid and from the standpoint of the company it would have been better to have so stated. But Stewart did not know this claim had been settled. He answered incorrectly. However, it was for the jury to say whether his reply was in good faith and actuated to some extent by an intent to serve the company. An agent does not depart from the scope of his employment merely because, in discharging the responsibilities assigned to him, he acts unwisely or through lack of of judgment or discretion, or in a manner which his employer would disapprove. The question is whether the words were uttered while Stewart was acting within the scope and in the performance of his duties in the course of transacting the business of the company. It is true that Stewart had no authority to adjust claims, but it may be reasonably inferred that he had implied authority to vouch for the reputation of the company in paying them.

The learned author of the main opinion, with characteristic clearness and accuracy, has reviewed most of our decisions relating to the liability of a corporation for slander uttered by its agent or servant but none, we think, require a conclusion that the corporate defendant here is entitled to a directed verdict. Cases like *Courtney v. American Ry. Exp. Co., supra,* 120 S. C. 511, 113 S. E. 332, 24 A. L. R. 128, would be applicable if Stewart or some other agent of the company had used this defamatory language in expressing a personal opinion as to why the Johnson claim had not been paid at a time when such agent was not engaged in the discharge of a duty committed to him by the company.

The case of *Mann v. Life & Casualty Ins. Co. of Tennessee,* 132 S. C. 193, 129 S. E. 79, 80, tends to sustain our conclusion. There Smith, a district superintendent of the in-

surance company, while addressing about a dozen agents under his supervision with reference to their duties, charged the plaintiff Mann, a former agent, with failure to turn in money collected. The company contended that there was no liability because Smith was not at the time entrusted with any duty in regard to Mann who was no longer employed by the company, but the Court held that the case should have been submitted to the jury on the theory that the alleged . defamatory language was used by Smith within the scope of his employment and while engaged in the actual discharge of his duties. It is true that the Court stated that the plaintiff Mann had not made a final settlement with the company and that Smith had the duty to adjust his account. But it clearly appears from the opinion of the majority of the Court on a petition for a rehearing that liability was not predicated upon this fact. It was there said: "The liability of the corporation for the alleged slander is based, not upon the fact that Smith was at the time engaged in some matter of business between Mann and the corporation, but in a matter of business between Smith and the corporation, the instruction of subordinate agents under his supervision."

With commendable frankness it is conceded by the author of the main opinion that the cases of *Wisemore v. First Nat. Life Ins. Co.,* 190 La. 1011, 183 So. 247, and *Waters-Pierce Oil Co. v. Bridwell,* 103 Ark. 345, 147 S. W. 64, clearly sustain appellant's position. It is said, however, that a different conclusion was reached on similar facts by the Supreme Court of Mississippi in *Hand v. Industrial Life & Health Ins. Co.,* 174 Miss. 822, 165 So. 616, 618. Not only was the Court divided in the *Hand case* but the facts are distinguishable. There a soliciting agent of an insurance company, while calling on a prospect, saw a policy written by another company of which the plaintiff was president. The mere sight of this policy provoked and aroused the agent who thereupon, without any excuse or justification, made derogatory remarks with reference to the company issuing that policy and also used certain defamatory language impugning

the integrity and honesty of the plaintiff who was president of the company. A majority of the Court concluded that in uttering the defamatory language, the agent was acting beyond the scope of his authority. In an opinion concurring in the result, the Chief Justice agreed that there was no liability for the reason that it was not shown that the agent's purpose in making the remarks was to aid him in the discharge of his duty. But he added: "If Palmer (the agent) uttered the defamatory words for the purpose of inducing Robinson (the prospect) to accept an insurance policy from the appellee, it, the appellee, is liable in damages therefor." The case supposed by the Chief Justice is strikingly similar to the one now presented.

STUKES and TAYLOR, JJ., concur.

BAKER, C. J., dissents.