**W. R. MATTHEWS, Plaintiff,**

v.

**U. S. RUBBER COMPANY and John J. Egan, Defendants.**

**Civ. A. No. 1034.**

United States District Court
E. D. South Carolina,
Columbia Division.

July 23, 1963.

Winter & Winter, Columbia, S. C., for plaintiff.

D. W. Robinson, Columbia, S. C., for defendant U. S. Rubber Co.

Thomas H. Pope, Newberry, S. C., for defendant John J. Egan.

WYCHE, District Judge (sitting by designation).

The above entitled action for slander was commenced in the Court of Common Pleas for Richland County and subsequently removed to this Court. The complaint alleges that the defendant Egan, acting in the scope and course of his employment as agent for the defendant Rubber Company, slandered plaintiff by certain remarks intended to charge him with breach of trust and forgery, made in the Columbia offices of General Motors Acceptance Corporation, in the presence of J. E. Cassell and Carl H. Ross and in hearing distance of various and sundry other persons then in said office.

The defendants, in their respective answers, set up (1) the defense of a general denial, (2) the defense of qualified privilege, and (3) that the complaint fails to state a claim upon which relief can be granted.

Depositions of the plaintiff, the defendant Egan, James E. Cassell and Carl H. Ross have been taken and the plaintiff testified that he did not know of anyone who heard the alleged slanderous statements besides Cassell and Ross and that he did not know of any person other than a General Motors Acceptance Corporation employee who was present in the office during Egan's visit. Ross testified that the only General Motors Acceptance Corporation employees who were closer

than he to Cassell and Egan during their conversation were the telephone operator Mrs. Inabinet, the cashier Mr. Kehl, and the assistant cashier Mrs. Stewart. Affidavits of Mrs. Inabinet, Mr. Kehl and Mrs. Stewart were filed with this Court and each of these individuals deposes that he heard none of the alleged conversation and knew nothing about it.

This case is now before me upon motion of the defendants to dismiss the complaint under Rule 12, and for summary judgment under Rule 56.

The events leading up to the alleged slander are not in dispute. The late F. B. Davis, Jr., at one time Chairman of the Board of the U. S. Rubber Company, prior to 1950, retired and purchased Brays Island Plantation near Yemassee, South Carolina, where he and his wife lived until his death on December 22, 1962. He was approximately eighty years of age at the time of his death, and his widow, who is about seventy-five years of age, is Executrix of his estate. In September, 1962, while Mr. Davis was hospitalized in Savannah, Georgia, his wife, through friends, requested H. E. Humphreys, Jr., then Chairman of the Board of the U. S. Rubber Company, to lend assistance in ascertaining the Davises' true financial condition. At that time Mr. Davis and Brays Island Plantation, Inc., a closely-held corporation in which Mr. Davis held a 98 per cent. interest, had outstanding liabilities of approximately $800,000. The plaintiff was a director and Vice President of Brays Island Plantation, Inc. but owned no stock in it. Several other corporations in which Mr. Davis directly or indirectly owned a substantial interest had become insolvent during the two years preceding September, 1962. Mrs. Davis herself knew little about Mr. Davis' business ventures and felt that she needed assistance in ascertaining the true condition of her husband's affairs.

At the direction of H. E. Humphreys, Jr. the defendant Egan, a senior accountant of the U. S. Rubber Company, reported to Mrs. Davis in South Carolina, in September, 1962, and visited this State from time to time thereafter to assist the Davises in ascertaining their financial condition. After Mr. Davis' death Mr. Egan returned to South Carolina, to assist Mrs. Davis, the Executrix, in preparing the estate inventory and ascertaining its debts.

On December 31, 1962, the Columbia office of General Motors Acceptance Corporation wrote Evans C. Henry, manager of Brays Island Plantation, Inc., that accounts Nos. 31351K8 and 31352K8 were open for December installments and requested payment. In response to this letter, Mr. Egan called at the Columbia office of General Motors Acceptance Corporation on or about January 10, 1963, to make inquiries about the status of the two accounts referred to in the letter. He carried with him a power of attorney from Mrs. Davis authorizing him to check into her own affairs and into the accounts of Brays Island Plantation, the letter from General Motors Acceptance Corporation and certain title certificates of the motor vehicles covered by the accounts in question. At least one of the certificates of title issued by the South Carolina State Highway Department bore the notation that the vehicle was subject to no liens.

Upon arriving in the General Motors Acceptance Corporation office, Egan was referred to J. E. Cassell, Credit Supervisor, as the man in charge of the Brays Island account.

The complaint alleges that, while holding the conditional sales contracts in question, Egan said of and concerning Matthews with regard to his execution of such paper, "Well, that's the trouble, Mr. Davis has obligations that he didn't even know about," or words to that effect.

The complaint then alleges that this language charged the plaintiff with breach of trust and forgery, crimes involving moral turpitude and with betraying the trust and confidence imposed in him by the late F. B. Davis, Jr. and Brays Island Plantation, Inc., and that the said statements were so understood by persons who heard such statements.

I find the facts specially and state my conclusions of law thereon as follows:

## FINDINGS OF FACT

1. This Court has jurisdiction of the parties and of the subject matter of this action.

2. There is no material issue of fact in dispute.

3. The only person who heard the alleged slanderous remarks made by Egan was James E. Cassell, Credit Supervisor of General Motors Acceptance Corporation. Carl H. Ross in his deposition testified unequivocally that he did not hear the conversation between Cassell and Egan. The employees who were in the vicinity of Cassell and Egan during their conversation, to wit, Mrs. Inabinet, Mr. Kehl and Mrs. Stewart, each gave an affidavit, stating that he or she did not hear the conversation or the alleged slanderous remarks. The plaintiff admitted that he did not know of any other persons who heard the remarks.

4. Cassell testified as to his conversation with Mr. Egan as follows: (Egan) "that was the difficulty, there were some obligations not known about. Q. Did he say by whom? Mrs. Davis? A. That is what I got out of it. Q. He said Mrs. Davis didn't know about some of the obligations, and I believe you knew at the time of the visit in 1963 that Mr. Davis had died the preceding December? A. Yes, sir."

5. The remarks made to Cassell as quoted by him, or as alleged in the complaint, are not slanderous.

6. The statements made to Cassell as testified by him or as pleaded in the complaint in connection with the other facts alleged by way of inducement are not actionable.

7. The statements made to Cassell were not understood by him as being made about Matthews, as charging Matthews with the commission of a crime or as raising a strong suspicion in his mind that Matthews had committed a crime. Giving these remarks their normal and ordinary meaning, they could not result in being considered slanderous of the plaintiff in the light of all the surrounding circumstances.

8. Egan was present in the General Motor Acceptance Corporation office and talked with Cassell as the agent and representative of Mrs. Davis, as Executrix of the Estate of F. B. Davis, Jr., and of Brays Island Plantation, Inc. There is no evidence which would justify the conclusion that Egan was at the time and place in question the agent of the defendant U. S. Rubber Company.

9. The plaintiff failed to comply with Rule 56(e) by setting forth, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. The only affidavits submitted by plaintiff were those of James Guthrie and Cannon Matthews which relate to hearsay conversations allegedly had by them with James E. Cassell. These affidavits are inadmissible and do not recite any specific facts controverting defendants' showing of a lack of material issues in dispute.

## CONCLUSIONS OF LAW AND OPINION

■ In the case of Lesesne v. Willingham, D.C., 83 F.Supp. 918 (1949) I summarized the rule in South Carolina with reference to slander as follows: "It seems to be well settled in this State that any words which falsely or maliciously charge the commission of a crime, or which distinctly assume or imply one has committed a crime, or which raise a strong suspicion in the minds of hearers or readers, that one has committed a crime, or which plainly and falsely charge the contraction of a contagious disease, adultery or a want of chastity, or unfitness in the way of a profession or trade, * * * are actionable per se."

This statement of the South Carolina rule was quoted with approval by the Court of Appeals for the Fourth Circuit in Hartzog v. United Press Ass'ns, 202 F.2d 81 (1953).

■ The Supreme Court of South Carolina, in Galloway v. Cox, 172 S.C. 101, 172 S.E. 761 (1934), held that when words are perfectly clear and unambiguous, their character as defamatory is a

question of law for the judge whose duty it is to instruct the jury as a matter of law either that they are or are not defamatory. In Stokes v. Great A. & P. Tea Co., 202 S.C. 24, 23 S.E.2d 823 (1943), the Supreme Court of South Carolina expressed the rule in another way. There it held that when the language alleged to be slanderous is plain and admits of but one reasonable construction, it becomes a matter of law for the determination of the court. To the same effect is the decision of the South Carolina Supreme Court in Black v. State Co., 93 S.C. 467, 77 S.E. 51 (1913), which makes it the province and duty of the court to say whether the words are plainly libelous ·or whether they are wanting in any defamatory signification.

The South Carolina Supreme Court has in a number of cases construed language as not being slanderous and, therefore, not actionable. In Galloway v. Cox, supra, the words spoken were, "Galloway, I have found you dishonest. I have found you out and that is enough for me." In Sawyer v. United Cigar Stores et al., 180 S.C. 70, 185 S.E. 38 (1936), the language was, "Sawyer, you can't play that machine that way. You are cheating it. You get out of here and stay ·out." In Bell v. Clinton Oil Mill et al., 129 S.C. 242, 124 S.E. 7 (1924), the language was, "You might get word to Theo. (the plaintiff) that the company is going to place his account (overdrawn ·expenses) with the bonding company." In Drakeford v. Dixie Home Stores, 233 S.C. 519, 105 S.E.2d 711 (1958), the store manager asked the plaintiff, "Have you paid for that coffee you have got in your bag?" In each of the foregoing cases the ·Court held that the words were not actionable.

■ In the instant case, the words used could not reasonably be interpreted ·as charging the commission of a crime. They were not so understood by the only person who heard them. Taking the whole conversation in its ordinary meaning, it is clear that Egan was simply stating that one of the difficulties which Mrs. Davis was having arose because of obligations about which she knew nothing. Admittedly, Mrs. Davis was not familiar with her husband's business. The plaintiff in another action brought by him and now pending in this Court (W. R. Matthews v. United States Rubber Company, et al., AC/1139) alleges in his verified complaint that Mrs. Davis was not versed in matters of business and that effort was made to shield her from the impact of Mr. Davis' declining financial status.

The alleged slanderous language did not slander the plaintiff. His name was not mentioned in the conversation. The hearer did not consider it a reflection on Matthews. Cassell testified that the conversation in question did not in any way affect his dealings with or his regard for Matthews. It is my opinion that the language used by Egan was not slanderous and is not actionable.

■ It is well settled in South Carolina that in order to hold a corporation liable for a slander spoken by one alleged to be its agent, it must appear that the alleged agent was acting within the scope of his employment and in the actual performance of the duties of the corporation touching the matter in question. Hypes v. Southern Railway, 82 S.C. 315, 64 S.E. 395, 21 L.R.A.,N.S., 873 (1909); Courtney v. American Ry. Express Co., 120 S.C. 511, 113 S.E. 332, 24 A.L.R. 128 (1922); Boling v. Clinton Cotton Mills et al., 163 S.C. 13, 161 S.E. 195 (1931); Johnson v. Life Ins. Co. of Georgia et al., 227 S.C. 351, 88 S.E.2d 260, 55 A.L.R.2d 813 (1955); Tedder v. Merchants & Manufacturers Ins. Co. of N. Y., 251 F.2d 250 (C.A.4, 1958).

In Johnson v. Life Ins. Co. of Georgia, et al., supra, the Court held that the phrase "touching the matter in question" as used in the oft-repeated statement of the rule means "concerning the subject-matter of the slander".

■ While it is admitted that U. S. Rubber Company was paying Mr. Egan's salary and expenses while he was in South Carolina, it is also undisputed that he was under the direction and control of

**836**

Mrs. Davis on the occasion of his visit to General Motors Acceptance Corporation. The defendant Rubber Company had no interest in the conditional sales contracts held by General Motors Acceptance Corporation nor did it have any interest in the vehicles covered by the contracts. Egan was not acting within the course and scope of his employment as agent for the defendant U. S. Rubber Company in this instance.

 Based upon the foregoing Findings of Fact, Conclusions of Law and Opinion, I am of the opinion that pursuant to Rule 12, the complaint should be dismissed for failure to state a claim upon which relief can be granted the plaintiff, and that pursuant to Rule 56, the defendants are entitled to summary judgment.

Entry of appropriate judgment is directed accordingly, and

It is so ordered.